**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Larry WILSON, Defendant–Appellant.**

**No. 90–5203.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1991.

Decided Dec. 3, 1991.

Beth Mina Farber, Asst. Federal Defender, Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, Baltimore, Md., on the brief), for defendant-appellant.

Christine Manuelian, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., Baltimore, Md., on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

OPINION

WILKINSON, Circuit Judge:

This case concerns the treatment of predicate offenses under the career offender provision of the United States Sentencing Guidelines. The sentence enhancements of the career offender provision apply only if a defendant has at least two prior felony convictions of either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1. Appellant contends that his 1976 robbery conviction cannot be a crime of violence for purposes of the career offender provision because the actual conduct for which he was convicted amounted

to nothing more than a pickpocketing. We think the Guidelines mandate a categorical approach to the offense rather than a particularized inquiry into the facts underlying the conviction. Under this categorical approach, appellant's robbery conviction is a violent crime qualifying him for career offender status under the Guidelines.

## I.

On October 24, 1989, the Grand Jury for the District of Maryland charged Larry Wilson with four counts of bank robbery and four counts of bank larceny in violation of 18 U.S.C. § 2113(a), (b), and (f) and 18 U.S.C. § 2. Wilson initially pleaded not guilty to all counts of the indictment. Subsequently, the government notified defense counsel that it planned to seek the sentence enhancements available under the career offender provision of the Sentencing Guidelines. U.S.S.G. § 4B1.1. Wilson then requested a pre-trial determination of whether he qualified as a "career offender." The district court held two separate hearings on that matter. At issue during the hearings was whether Wilson's 1976 robbery conviction qualified as a predicate "crime of violence" under the Guidelines. Wilson admitted that he had pleaded guilty in 1976 in Maryland state court to the crime of robbery and that he had received a four-year sentence for that crime. He argued, however, that that offense was not a crime of violence because the actual conduct involved was more in the nature of a pickpocketing than a robbery. The district court found that the 1976 robbery qualified as a predicate crime of violence irrespective of the facts and circumstances of the offense.

After the district court's ruling, Wilson pleaded guilty to count five of the indictment, which charged him with robbery of Vermont Federal Savings and Loan on September 7, 1989. At the subsequent sentencing hearing, the district court sentenced Wilson as a career offender. Pursuant to the career offender provision, the court calculated Wilson's base offense level at 32 with a criminal history category of VI. After granting Wilson a two-level downward adjustment for acceptance of responsibility, the court sentenced Wilson to 168 months' incarceration, a sentence at the low end of the applicable sentencing range.

Wilson appeals from the district court's decision to count his 1976 robbery conviction as a predicate crime of violence.

## II.

Wilson asks us to examine all the facts and circumstances of his 1976 robbery conviction in order to determine whether it is a crime of violence. After examining the relevant Guideline language and the applicable precedent, we do not think that such an inquiry is permitted.[1]

### A.

Section 4B1.1 of the Guidelines provides sentence enhancements for any defendant who qualifies as a "career offender." Under that provision, a defendant is a career offender if "(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Larry Wilson was over eighteen at the time of the instant bank robbery and the instant offense is clearly a crime of violence. The only issue in this case is whether Wilson's 1976 robbery conviction qualifies as a felony conviction of a crime of violence. Under the plain language of the Guidelines, we conclude that Wilson's robbery offense constitutes a "crime of violence" and that we need not—indeed,

1. Wilson also complains that the district court should not have used his 1976 robbery conviction because that conviction was constitutionally invalid. We reject this argument for two reasons. First, Wilson failed to raise the argument below. Second, even on appeal, Wilson has adduced no facts that would suffice to meet his burden of proving the unconstitutionality of his 1976 conviction. *See United States v. Davenport,* 884 F.2d 121, 124 (4th Cir.1989).

must not—look to the specific facts and circumstances underlying it.

The career offender provision that applies to Wilson defined "crime of violence" by incorporating the definition found in 18 U.S.C. § 16. U.S.S.G. § 4B1.2 (1988). That definition set forth the following two classes of violent crimes: (a) "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and (b) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16 (1988).[2] Wilson's robbery offense qualifies as a crime of violence under part (a). First, the application notes list robbery as one of several enumerated offenses expressly covered by the definition. U.S.S.G. § 4B1.2, comment (n.1) (1988); comment (n.2) (1991). Second, the Maryland robbery offense has as an element the use or threatened use of force. The Maryland courts have interpreted state law to adopt the common law definition of robbery: "the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear." *Williams v. State*, 302 Md. 787, 490 A.2d 1277, 1280 (1985). Thus, a conviction for robbery necessarily requires a finding of the use of force (a taking "by the use of violence") or threatened use of force (a taking "by putting in fear"). *See United States v. Selfa*, 918 F.2d 749, 751 (9th Cir.1990) (element of taking by "intimidation" equivalent to element of threatened use of force).

Although Wilson concedes that robbery is ordinarily a crime of violence, he contends that he should have been permitted to present evidence to prove that his 1976

offense was actually only a pickpocketing.[3] In Wilson's view, the Guidelines' definition establishes nothing more than a presumption that a defendant may rebut by presenting evidence of the facts and circumstances of the predicate offense.

We think that, contrary to Wilson's argument, the plain language of the Guidelines contemplates a legal rather than a factual approach to determining which offenses qualify as crimes of violence. First, the career offender provision is triggered by a defendant's "prior felony convictions," not his prior criminal conduct. U.S.S.G. § 4B1.1. Hence, the relevant determination is whether the defendant was convicted of a given offense, not whether he engaged in certain conduct. Second, the Guidelines' definition clearly mandates a categorical approach by focusing the inquiry on the *elements* of the offense rather than the particular conduct involved. Thus, the sentencing court's task is reduced to a simple legal inquiry—the court simply reads the statutory or common law definitions of the defendant's prior felonies to see whether they list as an element "the use, attempted use, or threatened use of physical force." Finally, the inherently categorical nature of this inquiry is underscored by the application notes, which enumerate in unqualified terms a number of crimes that are covered by the definition. U.S.S.G. § 4B1.2, comment (n.1) (1988); comment (n.2) (1991). By listing these enumerated crimes—such as murder, aggravated assault, forcible sex offenses, and robbery—without qualification, the clear implication is that such offenses are covered without regard to the particular circumstances under which they were committed.

### B.

The precedent of this and other circuits supports our holding in this case. Al-

---

**2.** Subsequent versions of the Guidelines eliminated from coverage offenses that involve force only against property, but preserved the same two basic classes as above. The current definition includes any felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

U.S.S.G. § 4B1.2(1) (1991). These modifications do not alter the scope of a court's inquiry into the predicate offense.

**3.** The government argues that even if Wilson were permitted to prove and did establish that his 1976 offense was a pickpocketing, it would still qualify as a crime of violence. We find it unnecessary to reach that question.

though this circuit has not heretofore expressly adopted the categorical approach under part (a) of the Guidelines' definition, the court has interpreted part (b) of that definition in a way that supports the categorical approach we take here. In *United States v. Thompson*, 891 F.2d 507, 509 (4th Cir.1989), we held that the offense of pointing a firearm at a person was a crime of violence under part (b) of the Guidelines definition because it "is an offense 'that, by its nature, involves a substantial risk that physical force against the person ... of another may be used in the course of committing the offense.' " That conclusion reflected a "common sense" consideration of the "nature" of the offense, without regard to whether the particular pistolpointing conduct for which the defendant was convicted involved a substantial risk of the use of physical force.[4] *Id.* at 509–10. The court in *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988), also embraced the categorical approach to situations such as these. In *Headspeth* the court interpreted the second part of the Armed Career Criminal Act's definition of "violent felony" (18 U.S.C. § 924(e)(2)(B)(ii)—which is almost identical to the second part of the current version of the Guidelines[5]—to require a categorical inquiry into whether the predicate offenses "pose *by their very nature* a serious potential risk of injury to another." *Id.* at 759 (emphasis in original). The court concluded that the categorical interpretation of the statute was "the most plausible" since the specifically enumerated crimes "are all offenses which by their very nature pose an inherent risk of injury to the person." *Id.* at 758.[6]

Several other circuits have confronted the precise question in this case and have held that the first part of the Guidelines' provision defining crime of violence permits only an examination of the underlying statute and forbids any factual inquiry. *United States v. John*, 936 F.2d 764, 767 (3d Cir.1991); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir.1991); *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir.1990); *United States v. Gonzalez–Lopez*, 911 F.2d 542, 547 (11th Cir.1990). *But see United States v. Baskin*, 886 F.2d 383, 389–90 (D.C.Cir.1989). Indeed, several circuits agree with our specific holding that robbery is *per se* a crime of violence under the Guidelines regardless of the particular circumstances of the crime. *See United States v. McAllister*, 927 F.2d 136, 139 (3d Cir.1991); *Jones*, 932 F.2d at 625; *Gonzalez–Lopez*, 911 F.2d at 547–48.

When the Supreme Court faced a choice between the particularized and the categorical approaches to the determination of violent crimes, it made plain its preference for the latter. *See Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor* the Court interpreted the Armed Career Criminal Act's definition of violent crimes—which again is almost identical to the current Guidelines definition—to forbid any inquiry into the particular facts underlying a defendant's prior convictions for burglary, an offense which is specifically enumerated as a crime of violence under the statutory definition. In the Court's view, the statute "generally requires the trial court to look only to the fact of conviction and the statutory defini-

---

**4.** We note that although the second part of the current Guidelines' definition eliminates textual reference to the "nature" of the offense, the application notes continue to instruct the court to inquire into whether the crime is one that "by its nature" presents a risk of physical injury. U.S.S.G. § 4B1.2, comment (n.2) (1991).

**5.** The only difference is that the statute lists "burglary" as its first enumerated crime, 18 U.S.C. § 924(e)(2)(B)(ii), while the current Guidelines' definition lists "burglary of a dwelling." U.S.S.G. § 4B1.2(1)(ii) (1991).

**6.** We recognize that a number of circuits have permitted the sentencing court to conduct an inquiry beyond the face of the statute under the

*second* part of the Guidelines' definition. *See United States v. Leavitt*, 925 F.2d 516, 517–18 (1st Cir.1991); *United States v. John*, 936 F.2d 764, 770 (3d Cir.1991); *United States v. Terry*, 900 F.2d 1039, 1042 (7th Cir.1990); *United States v. Cornelius*, 931 F.2d 490, 493 (8th Cir. 1991). But even those courts have generally limited the sentencing court's inquiry to the conduct described in the indictment or the information, *see Leavitt*, 925 F.2d at 517; we are aware of no case in which the courts have permitted the sentencing judge to second-guess the factual findings made at the time of the prior conviction.

tion of the prior offense." *Id.* 110 S.Ct. at 2160. In adopting the categorical approach, the Court relied on the language of the statute—which is triggered by prior *convictions* and focuses on the *elements* of prior offenses—and noted some of the practical difficulties associated with a factual inquiry. *Id.* at 2159.

### C.

Our holding promotes several important policies underlying the Guidelines. First, the categorical approach to crimes of violence under the Guidelines economizes on judicial resources, whereas the particularized approach creates a number of practical difficulties. The factual approach espoused by Wilson would transform the sentencing hearing into a series of mini-trials in which the defendant rehashes his version of the events that led to his predicate convictions and the prosecution searches for stale evidence to prove an element that was necessarily proved or admitted at the prior proceeding. Such a process would not only be costly, but unreliable. In many cases the predicate offense will have occurred many years previously and the relevant facts will be difficult to reconstruct. In this case, for example, Wilson's counsel proffers that the 1976 offense was only a pickpocketing, but admits that because of the significant lapse of time the witnesses and records are unavailable. We think that the Sentencing Commission must have been aware of these problems and we are unwilling to order such a costly and ineffectual inquiry into prior convictions in the absence of any authorization in the Guidelines. *See Taylor*, 110 S.Ct. at 2159; *Gonzalez–Lopez*, 911 F.2d at 548; *United States v. Sherbondy*, 865 F.2d 996, 1008 (9th Cir. 1988).

Second, the categorical approach furthers the important values of comity and federalism. In many cases, the predicate offenses will be state convictions, and the categorical approach avoids the unseemly process of calling witnesses before the federal court to review the propriety of the state conviction and the accuracy of its factual findings. *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981) (purposes of federalism are furthered by respecting the integrity of the state factfinding process). Wilson apparently concedes that his 1976 robbery conviction necessarily involved a finding that there was a taking "by violence" or by putting another person "in fear," but argues that because the record of his conviction has been lost or destroyed the sentencing court was required to adopt his version of events and jettison the Maryland court's finding. Absent some indication that the Sentencing Commission intended to override such important considerations of comity and federalism, we believe that the Maryland court's finding is entitled to a conclusive presumption of accuracy.

Third, the categorical approach promotes the Guidelines' goal of uniformity in sentencing because it avoids *ad hoc* determinations about what kind of conduct merits application of the career offender provision. *See Gonzalez–Lopez*, 911 F.2d at 547. The career offender provision promotes uniformity by focusing the sentencing court's inquiry on determinate factors such as the defendant's prior convictions and the elements of the prior offenses. Indeed, granting a sentencing court the broad discretion to reconsider the factual basis of a defendant's prior convictions would result in "correspondingly broad disparity in sentencing, for different courts may exercise their discretionary powers in different ways." U.S.S.G. Ch. 1, Pt. A, intro. comment. It would not be unrealistic to anticipate that different judges would entertain different views about the kind of criminal conduct that ought to serve as a predicate for the career offender enhancements. We do not believe the Sentencing Commission intended to compromise the important value of uniformity by opening up predicate offenses to the prospect of such disparate conclusions.

### III.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**