# MATTER OF ALCANTAR

## In Deportation Proceedings

## A-72101831

### Decided by Board May 25, 1994

(1) An offense meets the definition of a "crime of violence" under 18 U.S.C. § 16(a) (1988), for purposes of determining whether it is an "aggravated felony" as defined in section 101 (a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (Supp. IV 1992), if the offense has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

(2) An offense meets the definition of a "crime of violence" under 18 U.S.C. § 16(b), for purposes of determining whether it is an "aggravated felony" under section 101(a)(43) of the Act, if the offense is a felony and if the "nature of the crime—as elucidated by the generic elements of the offense—is such that its commission would ordinarily present a risk that physical force would be used against the person or property of another" irrespective of whether the risk develops or harm actually occurs.

(3) The respondent's conviction for involuntary manslaughter under Ill. Rev. Stat. ch. 38, para. 9-3(a) (1992), for which he was sentenced to 10 years in prison, constituted a "crime of violence" under 18 U.S.C. § 16(b), and an "aggravated felony" as defined in section 101(a)(43) of the Act.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1)(B) [8 U.S.C. § 1251(a)(1)(B)]—Entered without Inspection

Sec. 241(a)(2)(A)(iii) [8 U.S.C. § 1251(a)(2)(A)(iii)]—Convicted of aggravated felony

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
Sheila M. Entenman
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members

In a decision rendered on September 20, 1993, the immigration judge found the respondent deportable under section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B) (Supp. IV 1992), for entry without inspection, and ordered him deported to Mexico. The immigration judge also determined that the respondent was not deportable under section 241(a)(2)(A)(iii) of the Act for

conviction of an "aggravated felony," and it is this determination which the Immigration and Naturalization Service has challenged in its appeal.[1] The appeal will be sustained, and a new order of deportation will be entered. The Service's request for oral argument before this Board was withdrawn by Appellate Counsel for the Service.

The Service's charge of deportability under section 241(a)(2)(A)(iii) of the Act is based on the respondent's June 18, 1992, conviction in the Circuit Court of Cook County, Chicago, Illinois, for involuntary manslaughter committed on June 25, 1991. The respondent had been charged with first degree murder on the grounds that he "without lawful justification intentionally and knowingly struck Karla Alcantar Lemus with his fists and killed her," but he pleaded guilty to, and was convicted of, involuntary manslaughter. The respondent was sentenced to 10 years in prison. The Service contends that this conviction is a "crime of violence," and therefore an "aggravated felony" within the meaning of section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (Supp. IV 1992).

## CRIME OF VIOLENCE UNDER 18 U.S.C. § 16

Section 101(a)(43) of the Act provides as follows:

The term "aggravated felony" means murder, any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act), including any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, any offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), *or any crime of violence (as defined in section 16 of title 18, United States Code, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years,* or any attempt or conspiracy to commit any such act. Such term applies to offenses described in the previous sentence whether in violation of Federal or State law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

Section 101(a)(43) of the Act (emphasis added). The inclusion of "crimes of violence" in the definition of an "aggravated felony" was accomplished by section 501 of the Immigration Act of 1990 and applies to offenses committed on or after November 29, 1990. *See* section 501 of the Immigration Act of 1990, Pub. L. No. 101-649, 104

---

[1] The respondent did not request relief from deportation and, of course, is as deportable under one charge as under two. Nevertheless, we will address the Service's appeal because a finding of deportability based on conviction of an aggravated felony carries its own additional liabilities and, therefore, is not mere surplusage. *See, e.g.,* section 212(a)(6)(B) of the Act, 8 U.S.C. § 1182(a)(6)(B) (Supp. IV 1992) (extending requirement of consent to reapply after removal from United States to within 20 years of removal in the case of an alien convicted of an aggravated felony).

Stat. 4978, 5048 (effective Nov. 29, 1990), *as corrected by* section 306(a)(1) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1751 (enacted Dec. 12, 1991).

The respondent's offense was committed on June 25, 1991, subsequent to the November 29, 1990, effective date for considering crimes of violence as aggravated felonies. *See* section 501(b) of the Immigration Act of 1990, 104 Stat. at 5048. There is no suggestion that the offense was "purely political." In addition, the respondent was sentenced to 10 years' imprisonment for his conviction and, therefore, the 5-year sentence prerequisite in section 101(a)(43) of the Act has been satisfied. The only issue is whether the respondent's conviction for involuntary manslaughter falls within the definition of "crime of violence" found at 18 U.S.C. § 16 (1988).

The term "crime of violence" is defined in 18 U.S.C. § 16 as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The respondent was convicted of involuntary manslaughter under the following provision:

A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide.

Ill. Rev. Stat. ch. 38, para. 9-3(a) (1992). Conviction under this provision is designated as a class 3 felony. *Id.* at para. 9-3(d).

Without citing any authority, the immigration judge found that "intent is crucial to finding that a conviction constitutes a crime of violence for purposes of 18 U.S. Code Section 16." As the provision under which the respondent was convicted is based on unintentional killing, the immigration judge concluded that the respondent was not convicted of a crime of violence within 18 U.S.C. § 16, and, consequently, was not convicted of an aggravated felony under section 101(a)(43) of the Act.

### RELATED PROVISIONS

Although relatively new to the Immigration and Nationality Act, the term "crime of violence" as defined at 18 U.S.C. § 16 is used in many places in the United States Code and has a history of interpretation in the courts upon which we can draw in applying the term for purposes

of section 101(a)(43) of the Act. First, 18 U.S.C. § 16 serves as the general definition of a "crime of violence" for title 18, *see United States v. Aragon*, 983 F.2d 1306, 1311 (4th Cir. 1993), which includes numerous references to the term. *See* 18 U.S.C. § 929(a)(1) (1988) (possession of restricted ammunition in commission of crime of violence); 18 U.S.C. § 1952(a)(2) (1988 & Supp. IV 1992) (use of interstate travel, commerce, or mail with intent to commit a crime of violence); 18 U.S.C. § 1959(a)(4) (1988) (threat, attempt, or conspiracy to commit crime of violence in aid of racketeering activity); 18 U.S.C. § 3521(a)(1) (1988) (witness relocation and protection where crime of violence is directed at witness); 18 U.S.C. § 5032 (1988 & Supp. IV 1992) (juvenile delinquency proceedings and transfer for criminal prosecution); 18 U.S.C. § 5038 (1988) (preparation and use of juvenile records where act committed, if it had been committed by an adult, would be felony and crime of violence); *cf.* 15 U.S.C. § 1245(b) (1988) (use of ballistic knife in commission of crime of violence); 20 U.S.C. § 1232g(b)(6) (Supp. II 1990) (release of post-secondary institution's disciplinary proceedings against alleged perpetrator of crime of violence); 25 U.S.C. § 3207(b) (Supp. IV 1992) (Indian child protection); 28 U.S.C. § 994(h), (i), (j) (1988) (duties of United States Sentencing Commission); 40 U.S.C. § 212a (Supp. IV 1992) (arrests by Capitol Police for crimes of violence).

In addition, separate definitions of the term "crime of violence" which are virtually identical to that at 18 U.S.C. § 16 are found at 18 U.S.C. §§ 924(c)(3) and 3156(a)(4) (1988). And, 18 U.S.C. § 16 itself was previously used at 18 U.S.C. § 924(c) and at section 4B1.2 of the United States Sentencing Guidelines prior to the November 1, 1989, amendments to section 4B1.2. *See* 18 U.S.C.A. app. 4, § 4B1.2 (West Supp. 1994) ("Sentencing Guidelines"). We will briefly look at each of these sections.

Under 18 U.S.C. § 924, increased liability is authorized for various offenses, including any "crime of violence," which is defined, for purposes of § 924 as

an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3); *see also* 18 U.S.C. §§ 924(c)(1) (increasing liability for "drug trafficking crimes" and "crimes of violence" committed with the use of or while carrying a firearm), (d)(3), (g)(4), and (h) (1988 & Supp. IV 1992). "Crime of violence" for purposes of 18 U.S.C. § 924(c) was previously defined by reference to 18 U.S.C.

§ 16. *See United States v. Diaz*, 778 F.2d 86 (2d Cir. 1985), *cert. denied*, 488 U.S. 818 (1988). The definition at 18 U.S.C. § 924(c)(3) was added in 1986 and, subsequently, courts have found the analysis under 18 U.S.C. § 924(c)(3) and 18 U.S.C. § 16 to be the same. *See United States v. Clark*, 773 F. Supp. 1533 (M.D. Ga. 1991) (applying analysis of 18 U.S.C. § 16 to § 924(c)(3)).

"Crime of violence" is defined at 18 U.S.C. § 3156(a)(4) for purposes of the Bail Reform Act as follows:

[T]he term "crime of violence" means—

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*See also* 18 U.S.C. §§ 3142 (1988 & Supp. IV 1992) (indicating effect of "crime of violence" in determining pretrial detention), 3143 (1988 & Supp. IV 1992) (concerning detention pending sentence or appeal). As with 18 U.S.C. §§ 16 and 924(c)(3), courts have equated 18 U.S.C. §§ 16 and 3156(a)(4). *See, e.g., United States v. Sloan*, 820 F. Supp. 1133 (S.D. Ind. 1993); *United States v. Marzullo*, 780 F. Supp. 658, 661 (W.D. Mo. 1991) ("[I]t is reasonable to conclude that Congress, in choosing to use the same language in enacting 18 U.S.C. § 16 and 18 U.S.C. § 3156 and choosing to enact them as part of the same bill on the same day, intended that both sections would mean the same thing."); *cf. United States v. Patino*, 962 F.2d 263 (2d Cir.) (finding analysis of "crime of violence" at 18 U.S.C. § 3156(a)(4) "dispositive" of analysis under 18 U.S.C. § 924(c)(3)), *cert. denied*, 113 S. Ct. 354 (1992).

Prior to the November 1, 1989, amendments to section 4B1.2 of the Sentencing Guidelines and its application notes, the term "crime of violence" was defined by incorporating the definition at 18 U.S.C. § 16, just as is currently done in section 101(a)(43) of the Immigration and Nationality Act. *United States v. Wilson*, 951 F.2d 586, 587-88 & n.2 (4th Cir. 1991), *cert. denied*, 504 U.S. 951, (1992).[2]

---

[2] Use of the term "crime of violence" under the Sentencing Guidelines arises perhaps most commonly in section 4B1.1 which provides sentence enhancements for any defendant who qualifies as a "career offender." Under this provision, a defendant is a career offender if

(1) the defendant was at least eighteen years old at the time of the instant offense,
(2) the instant offense of conviction is a felony that is either a *crime of violence* or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a *crime of violence* or a controlled substance offense.

Sentencing Guidelines, § 4B1.1 (emphasis added). The term also operates for purposes

. The 1989 amendments dropped reference to 18 U.S.C. § 16, eliminated from coverage offenses that involve force only against property, enumerated certain offenses as qualifying as crimes of violence, and dropped the words "by its nature" in the second part of the definition. *See id.* As such, with respect to cases interpreting section 4B1.2 prior to the November 1989 amendments, the same "crime of violence" definition that was being interpreted in those cases is the one applicable here, with the caveat that the application notes to section 4B1.2 play an additional role in the interpretation of section 4B1.2 as is discussed, *infra*, at pages 15-18.[3]

of sections 2E1.2, 2K1.3, 2K2.1, 2L1.2, 3D1.1, 4A1.1, 4A1.2, 4B1.4, and 7B1.1 of the Sentencing Guidelines.

[3]Section 4B1.2(1) of the Sentencing Guidelines now reads as follows:
The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that —
  (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
  (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

This amended definition was derived from the definition of the term "violent felony" at 18 U.S.C. § 924(e)(2)(B):
[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
  (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
  (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another
.... 18 U.S.C. § 924(e)(2)(B) (1988 & Supp. IV 1992). Thus, while these two definitions retain classes similar to the definition at 18 U.S.C. § 16, *see United States v. Wilson, supra*, at 588 n.2, and are useful in interpreting § 16, they do differ, and the extent of any permissible analogy between § 16 and the current definitions of a "crime of violence" at section 4B1.2(1) of the Sentencing Guidelines, or of "violent felony" at 18 U.S.C. § 924(e)(2)(B), must be careful to reflect these differences. *See generally infra*, pages 12-15 (appropriateness of consideration of facts underlying conviction under part two of the varying definitions); *United States v. Wilson, supra*, at 588 n.2 (noting that definition of "crime of violence" at section 4B1.2(1) of the Sentencing Guidelines, as amended in 1989, and definition of "violent felony" at 18 U.S.C. § 924(e)(2)(B) do not encompass offenses that involve force only against property); *United States v. Sloan, supra*, at 1139 & n.8 (noting that 18 U.S.C. §§ 16 and 3156(a)(4) include both felonies and misdemeanors under part one of their definitions, but that section 4B1.2(1) of the Sentencing Guidelines, as amended in 1989, and 18 U.S.C. § 924(e)(2)(B) include only felonies under part one; also, equating definitions of "crime of violence" found at 18 U.S.C. §§ 16 and 3156(a)(4) and distinguishing them from the amended (post-November 1, 1989) definition of "crime of violence"

Consequently, our analysis of the term "crime of violence" is preceded by a history of interpretation of the same term for other purposes in the United States Code.[4] As such, in some cases the question whether a conviction under a particular statutory provision is a "crime of violence" will have been answered using the same term in another context and may be persuasive or even binding on us.[5] Furthermore, we note that the term "aggravated felony" has relevance beyond immigration law and therefore consideration of the specific question of whether the term "crime of violence" constitutes an "aggravated felony" will also be found outside immigration proceed-

---

at section 4B1.2(1) of the Sentencing Guidelines and from the definition of "violent felony" at 18 U.S.C. § 924(e)).

[4] It should be noted that two additional but very different definitions of "crime of violence" have also originated in the United States Code. One appears at 28 U.S.C. § 2901(c) (1988) with respect to rehabilitation of narcotics addicts, and a second appeared at 18 U.S.C. § 4251(b) (1988), which also concerned narcotics addicts. The provision at 18 U.S.C. § 4251(b) was repealed effective November 1, 1987, but remained applicable for 5 years to individuals who committed an offense or act of juvenile delinquency prior to November 1, 1987. Pub. L. No. 98-473, tit. II, § 218(a)(6), 98 Stat. 2027, 2031 (1984).

[5] See, e.g., United States v. Reyes-Castro, 13 F.3d 377 (10th Cir. 1993) (stating that rape and attempted sexual abuse of a child constitute crimes of violence under 18 U.S.C. § 16(b) for purposes of determining "aggravated felony"); United States v. Aragon, supra (finding attempt to rescue or assist a prisoner to escape to be a crime of violence under 18 U.S.C. § 16(b) for purposes of 18 U.S.C. § 1952); United States v. Patino, supra (stating that kidnapping is a crime of violence under 18 U.S.C. § 924(c)(3)(A); conspiracy to commit kidnapping qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(B)); United States v. Wilson, supra (robbery held to be a crime of violence under 18 U.S.C. § 16(a) as incorporated at section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments); United States v. Gonzalez-Lopez, 911 F.2d 542 (11th Cir. 1990), cert. denied, 500 U.S. 933 (1991) robbery held to be a crime of violence under 18 U.S.C. § 16(a) and under § 16(b) for purposes of section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments; residential burglary also found to be a crime of violence under 18 U.S.C. § 16(b)); United States v. Cruz, 882 F.2d 922 (5th Cir. 1989) (finding that burglary of a habitation under Texas Penal Code § 30.02 qualified, without reference to whether violence actually occurred, as a crime of violence under section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments); United States v. Diaz, supra (finding that narcotics offenses do not constitute crimes of violence under 18 U.S.C. § 16 for purposes of 18 U.S.C. § 924(c)); United States v. Marzullo, supra (arson is a crime of violence against both person and property under 18 U.S.C. §§ 3156(a)(4)(A) and (B)); United States v. Clark, supra (concluding that—in contrast to extortion induced by wrongful use of actual or threatened force, violence, or fear—crime of extortion under color of official right as defined in 18 U.S.C. §§ 1951(a) and (b)(2) is not a crime of violence under 18 U.S.C. § 924(c)(3)); United States v. Saunders, 743 F. Supp. 444 (E.D. Va. 1990) (finding that rape, armed robbery, felonious assault, and unlawful wounding are crimes of violence under 18 U.S.C. § 16 for purposes of section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments), aff'd, 943 F.2d 388 (4th Cir. 1991), cert. denied, U.S. , 112 S. Ct. 1199 (1992).

ings. *See, e.g., United States v. Frias-Trujillo,* 9 F.3d 875 (10th Cir. 1993) (defendant's crime constituted a "crime of violence" and therefore an "aggravated felony," thereby warranting 16 level increase under section 2L1.2(b)(2) of the Sentencing Guidelines); *United States v. Rodriguez,* 979 F.2d 138 (8th Cir. 1992) (same).

### UNITED STATES V. SPRINGFIELD

With this context in mind, we find that an issue similar to the one before us was addressed by the United States Court of Appeals for the Ninth Circuit in *United States v. Springfield,* 829 F.2d 860 (9th Cir. 1987). In *Springfield,* the court was required to decide whether a federal conviction for involuntary manslaughter constituted a "crime of violence" under 18 U.S.C. § 924(c)(3), which, as noted above, defines the term "crime of violence" by the same elements as it is defined at 18 U.S.C. § 16.

Contrary to the opinion of the immigration judge in the present case that specific intent was required to find a crime of violence, the court in *Springfield* noted the following:

> The legislative history indicates that Congress did not intend to limit "crimes of violence" to crimes of specific intent: "Since no culpability level is prescribed in this section, the applicable state of mind that must be shown is, at a minimum, 'reckless,' i.e., that the defendant was conscious of but disregarded the substantial risk that the circumstances existed."

*United States v. Springfield, supra,* at 863 n.1 (citing S. Rep. No. 307, 97th Cong., 1st Sess. 890-91 (1982)).

The involuntary manslaughter provision at issue in *Springfield* was defined as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112 (1988); *see United States v. Springfield, supra,* at 862. As to the first part of the definition of a "crime of violence" under 18 U.S.C. § 924(c)(3), the court in *Springfield* found that "[t]he 'use, attempted use, or threatened use of physical force' is not an element in the crime of involuntary manslaughter." *United States v. Springfield, supra,* at 862. The court then explained that the second part of the definition of "crime of violence" at § 924(c)(3) "covers crimes such as robbery that do not have as an element the use of physical force but 'by their nature' create a situation in which it is likely that the criminal may resort to physical force to accomplish the criminal end." *Id.* at 863 (citing S. Rep. No. 225, 98th Cong., 2d Sess. 307, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486-87). As to this second part of the definition, the court found that "[i]nvoluntary manslaughter does, in the sense intended in the statute, carry with it the 'risk' of physical force." *Id.*

The court rejected the defendant's contention that the definition of a "crime of violence" was limited to crimes that are anticipated and intended, and it concluded that "involuntary manslaughter, which 'by its nature' involves the death of another person, is highly likely to be the result of violence. It thus comes within the intent, if not the precise wording, of section 924(c)(3)." *Id.* The court summed up with the following statement: "Our analysis of involuntary manslaughter in terms of the likelihood of the occurrence of violence reconciles the words of the statute and the legislative intent to include non-intent crimes." *Id.* at 863 n.1.

We will follow the reasoning in *Springfield.* As noted, 18 U.S.C. § 924(c)(3), at issue in *Springfield,* defines a "crime of violence" by the same elements as it is defined at 18 U.S.C. § 16, and the analysis under each section has been held to be analogous. *See United States v. Clark, supra,* at 1535. Like the federal provision in *Springfield,* involuntary manslaughter under paragraph 9-3(a) of the Illinois law does not have as an element the "use, attempted use, or threatened use of physical force" as required under 18 U.S.C. § 16(a). *See, e.g., United States v. Wilson, supra,* at 589 (stating that first part of the definition of a crime of violence examines elements of criminal statute or provision and forbids any factual inquiry); *United States v. Aragon, supra,* at 1311-12 (same). Thus, if the respondent's offense is to qualify as a crime of violence it must do so under the second part of the definition, part (b) of § 16.

## THE CATEGORICAL APPROACH

The approach used in *Springfield* under the second part of the definition of a "crime of violence," which is sometimes referred to by courts as the "catchall" provision, is a generic or categorical approach. That is, the catchall provision of the definition of a "crime of violence" at issue in *Springfield* and, by analogy, at issue here, focuses on the offense's inherent potential for risk of physical force as opposed to the actual harm caused. As expressed in *United States v. Gonzalez-Lopez,* 911 F.2d 542 (11th Cir. 1990), *cert. denied,* 500 U.S. 933, (1991):

> Section 16(b) contemplates a generic category of offenses which typically present the risk of injury to a person or property irrespective of whether the risk develops or harm actually occurs. Offenses within the scope of section 16(b) have as a commonly shared characteristic the potential of resulting in harm. Once the court determines that the defendant has been convicted of a crime that usually involves a risk of harm, the inquiry ends; it does not matter whether that risk has matured into actual harm.

*Id.* at 547 (interpreting 18 U.S.C. § 16(b) for purposes of section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments).

There is a history of dispute in cases interpreting the various definitions of a "crime of violence" concerning whether the inquiry under part two of the definition can or should go beyond the "categorical" or "generic" form of the crime to the "particularized" consideration of underlying facts of the conviction. However, as the following discussion addresses, this dispute originates mainly from the commentary to the Sentencing Guidelines and from interpretations of the November 1, 1989, amended "crime of violence" definition in the Sentencing Guidelines. We find the particularized approach to be inapposite to the definition at 18 U.S.C. § 16.

Prior to November 1, 1989, when the term "crime of violence" was still defined for purposes of the Sentencing Guidelines at section 4B1.2 by simple incorporation of the definition at 18 U.S.C. § 16, the commentary to section 4B1.2 read in part as follows:

> Other offenses are covered only if the *conduct for which the defendant was specifically convicted* meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

Sentencing Guidelines, § 4B1.2, application note 1 (1988). Some courts read this language as allowing inquiry to reach beyond the elements of the crime to the specific conduct or underlying facts of the conviction. *See, e.g., United States v. Goodman,* 914 F.2d 696 (5th Cir. 1990) (defendant's admission that he was returning to the scene of a scuffle armed with a rifle was considered in finding that possession of a firearm by a convicted felon was crime of violence), *abrogated by United States v. Fitzhugh,* 954 F.2d 253 (5th Cir. 1992), *cert. denied,* 114 S. Ct. 259 (1993); *United States v. McNeal,* 900 F.2d 119, 123 (7th Cir. 1990) (evidence that gun had been fired considered in finding that felon in possession of firearm is crime of violence); *United States v. Williams,* 892 F.2d 296, 304 (3d Cir. 1989) (finding that possession of gun while firing it is crime of violence, but mere possession is not), *cert. denied,* 496 U.S. 939 (1990). However, in addition to the fact that it no longer exists in the above-quoted form, this application note had no direct application to the interpretation of 18 U.S.C. § 16 for purposes other than the Sentencing Guidelines and, as such, would not apply to 18 U.S.C. § 16 for purposes of section 101(a)(43) of the Act.

The November 1, 1989, amendments to section 4B1.2 of the Sentencing Guidelines and to its commentary substituted a definition of a "crime of violence" which dropped the words "by its nature" from the text, see *supra* note 3, but continued them in the commentary. In addition, the commentary clarified its reference to "conduct" by including "conduct *set forth in the count* of which the defendant was convicted [which] involved use of explosives or, by its nature,

presented a serious potential risk of physical injury to another." Sentencing Guidelines, § 4B1.2, application note 2 (1990) (emphasis added). The 1991 amendments to the commentary further refined the reference to "conduct" by adding the words "expressly charged" to application note 2 to state that "the conduct set forth (i.e., expressly charged) in the count ... presented a serious risk of physical injury." Sentencing Guidelines, § 4B1.2, application note 2 (1992).

Even with the 1989 and 1991 amendments, controversy over whether particularized conduct may be considered in determining a "crime of violence" under the Sentencing Guidelines has continued. *Compare United States v. Wilson, supra*, at 589-90 & n.6 (finding categorical approach appropriate under both parts of the amended "crime of violence" definition at section 4B1.2(1) of the Sentencing Guidelines, but recognizing that some circuits have permitted particularized inquiry under the second part of the definition) *with United States v. Fitzhugh, supra* (finding that 1989 and 1991 amendments to section 4B1.2 clarify that sentencing court, in determining "crime of violence" based on risk of physical injury, may consider conduct expressly charged in the count of which the defendant was convicted, but not any other conduct that might be associated with the offense) *and United States v. Chapple*, 942 F.2d 439 (7th Cir. 1991) (decided prior to 1991 amendment, citing commentary as authority to consider underlying facts; policy questioned in dissent) *and United States v. Wright*, 957 F.2d 520 (8th Cir.) (subsequent to 1991 amendment continuing to allow examination of the facts underlying a conviction when deciding whether an offense involves conduct that presents a serious risk of physical injury under part two· of the amended definition at section 4B1.2(1)), *cert. denied*, 113 S. Ct. 167 (1992). *See generally United States v. Smith*, 10 F.3d 724, 731-32 (10th Cir. 1993) (noting continuing disagreement among courts in analyzing catchall clause of section 4B1.2(1)).

We find inapposite those cases interpreting the amended definition of a "crime of violence" in the Sentencing Guidelines to include consideration of the particular conduct underlying the conviction. The language of 18 U.S.C. § 16 directs us to examine the "nature" of the offense, and the language under section 4B1.2(1) of the Sentencing Guidelines and its commentary, which drives the inquiry under part two of the definition from the general to the specific, from the nature of the crime to the specific conduct of the offense, is not controlling. *United States v. Aragon, supra*, at 1312 (finding categorical approach required under 18 U.S.C. § 16(b); noting that commentary to Sentencing Guidelines led to dispute among courts over whether factual analysis of the actual conduct was permitted under catchall provision, and distinguishing that dispute from the analysis of 18 U.S.C. § 16 on

its own terms); *United States v. Marzullo, supra,* at 662-63 n.8 (analysis of conduct under Sentencing Guidelines definition of "crime of violence" deemed inapposite to definition of "crime of violence" at 18 U.S.C. § 3156, which parallels that at 18 U.S.C. § 16).

Moreover, in facing a choice between the particularized and the categorical approach for purposes of the definition of a "violent felony" at 18 U.S.C. § 924(e)(2)(B), from which the amended definition at section 4B1.2(1) of the Sentencing Guidelines was derived, the United States Supreme Court clearly chose the categorical approach and forbade any inquiry into the particular facts underlying the conviction. *Taylor v. United States,* 495 U.S. 575, 602 (1990) ("We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary."); *see also United States v. Reyes-Castro,* 13 F.3d 377, 378 (10th Cir. 1993) (citing *Taylor* in adopting the categorical approach to 18 U.S.C. § 16(b) in determining if crime is "aggravated felony" for deportation purposes); *United States v. Wilson, supra,* at 589-90 (referring to *Taylor* in adopting the categorical approach to part two of the amended Sentencing Guidelines' definition of "crime of violence"); *United States v. Becker,* 919 F.2d 568, 570 (9th Cir. 1990) (citing *Taylor* in adopting the categorical approach to 18 U.S.C. § 16(b) for purposes of section 4B1.2 of the Sentencing Guidelines prior to the November 1989 amendments), *cert. denied,* 499 U.S. 911 (1991); *United States v. Clark, supra,* at 1535 & n.4 (finding the *Taylor* test for "violent felony" to be "analogous" to determination of "crime of violence" under 18 U.S.C. §§ 16 and 924(c)(3)); *cf. United States v. Headspeth,* 852 F.2d 753 (4th Cir. 1988) (applying law of lenity to limit the catchall clause of definition of "violent felony" to offenses which pose by their very nature a serious potential risk of injury, even though definition does not contain the "by its nature" language of 18 U.S.C. § 16(b)), *abrogated on other grounds by Taylor v. United States, supra.*

Therefore, we apply the generic or categorical approach to 18 U.S.C. § 16(b). That is, analysis under 18 U.S.C. § 16(b) requires first that the offense be a felony; and, if it is, that the "nature of the crime—as elucidated by the generic elements of the offense—is such that its commission would ordinarily present a risk that physical force would be used against the person or property of another" irrespective of whether the risk develops or harm actually occurs. *United States v. Marzullo, supra,* at 662; *see also United States v. Reyes-Castro, supra,*

at 379 ("substantial risk that physical force may be used .... It does not matter whether physical force is actually used."); *United States v. Aragon, supra*, at 1313 ("crime that 'by its nature' creates a *substantial risk of the possible use* of physical force"); *United States v. Gonzalez, supra*, at 547 ("generic category of offenses which typically present the risk of injury to a person or property irrespective of whether the risk develops or harm actually occurs"); *United States v. Springfield, supra*; *United States v. Cruz*, 805 F.2d 1464 (11th Cir. 1986), *cert. denied*, 481 U.S. 1006 (1987), *cert. denied sub nom. United States v. Thomas*, 482 U.S. 930 (1987). While the categorical approach to 18 U.S.C. § 16(b) might occasionally include consideration of the charging papers or jury instructions in order to identify the "offense," an issue we need not address here, it does not extend to consideration of the underlying facts of the conviction. *Cf. Taylor v. United States, supra*, at 602; *United States v. Clark, supra*, at 1535 n.4.

## APPLICATION

The respondent's offense under paragraph 9-3(a) of the Illinois law satisfies the first element of 18 U.S.C. § 16(b) in that it is a felony. Ill. Rev. Stat. ch. 38, para. 9-3(d) (1992); 18 U.S.C. § 3559 (1988) (defining felony under federal criminal law as any offense where the maximum term of imprisonment authorized exceeds 1 year).

Like 18 U.S.C. § 924(c)(3), which was at issue in *Springfield*, 18 U.S.C. § 16(b) does not require specific intent to do violence. It includes at a minimum reckless behavior which, "by its nature," involves a substantial risk of physical force against the person or property of another. *United States v. Springfield, supra*, at 863 n.1.

Similar to involuntary manslaughter under the federal statute at issue in *Springfield*, the Illinois provision necessarily involves the death of another person, is highly likely to be the result of violence, and carries with it, within the sense intended in 18 U.S.C. § 16(b), the substantial risk of physical force against another person. *United States v. Springfield, supra*; *cf. United States v. Lykes*, 999 F.2d 1144, 1146 n.1 (7th Cir. 1993) (presuming that state law conviction for involuntary manslaughter was crime of violence); *United States v. Leeper*, 964 F.2d 751 (8th Cir. 1992) (finding manslaughter to be crime of violence under sections 4B1.1 and 4B1.2(1) of the amended Sentencing Guidelines); *United States v. O'Neal*, 937 F.2d 1369 (9th Cir. 1991) (following *Springfield* in determining that California conviction for vehicular manslaughter constituted violent felony), *abrogated on other grounds by United States v. Sahakian*, 965 F.2d 740 (9th Cir. 1992).

Accordingly, we find that the respondent's conviction for involuntary manslaughter under Illinois law is a crime of violence within the meaning of 18 U.S.C. § 16, and, correspondingly, an aggravated

felony under section 101(a)(43) of the Act. The charge of deportability based on the respondent's conviction for an aggravated felony is sustained.

**ORDER:**   The appeal of the Immigration and Naturalization Service is sustained.

**FURTHER ORDER:**   The respondent shall be deported from the United States to Mexico pursuant to sections 241(a)(2)(B) and 241(a)(2)(A)(iii) of the Immigration and Nationality Act.