60 F.3d 825
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony Curtis DOSWELL, Defendant-Appellant.
 No. 94-5568.
 United States Court of Appeals, Fourth Circuit.
 Argued May 2, 1995.
Decided June 29, 1995.
 
 ARGUED: David Richard Solomon, Baltimore, MD, for Appellant. Andrew George Warrens Norman, Assistant United States Attorney, Baltimore, MD, for Appellee. ON BRIEF: Lynne A. Battaglia, United States Attorney, John A. Gephart, Assistant United States Attorney, Baltimore, MD, for Appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and NIEMEYER and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Anthony Curtis Doswell of conspiring to rob a bank and attempting to rob a bank. See 18 U.S.C. Secs. 371, 2113(a). The district court gave him concurrent sentences of 60 months for the conspiracy and 210 months for the attempted bank robbery. Doswell appeals, claiming that the district court (1) unduly restricted his cross-examination of a key government witness and (2) erred in sentencing him as a career offender. Finding no error, we affirm.
 
 I.
 
 2
 On December 2, 1993, Doswell and James Eric Hill went into the Harbor Bank of Maryland in Baltimore. Both men walked to the check-writing island, where each wrote a demand note. Hill finished first, turned and approached a teller, Ms. Stanley. At Stanley's counter, Hill presented his robbery note. The note read: "No dye packs. No one will be hurt." Stanley simply stared at Hill. Another teller activated the silent alarm. Meanwhile, Doswell walked from the check-writing island to the front door of the bank, where he stood. Hill, sensing trouble, retreated to the front door and indicated to Doswell that something was wrong. The would-be robbers then left the bank, without taking any money. Once outside, they went in different directions.
 
 
 3
 Doswell headed south on York Road. Within minutes, Baltimore Police Officer Robert Alexander, who responded to the alarm, arrested a man on York Road who matched the description of one of the robbers. Officer Alexander then took the arrested man (Doswell) back to the Harbor Bank where tellers identified him. Following this identification, Officer Alexander retraced the route he believed the fleeing Doswell would have taken from the bank. Several blocks south of the bank, in a private alley off York Road, Officer Alexander found a torn-up withdrawal slip from the Harbor Bank. Doswell's handwritten demand note was on the back of the slip.
 
 
 4
 Five days later, on December 7, 1993, a confidential source told the FBI that James Eric Hill also participated in the attempted robbery of the Harbor Bank. The FBI assembled a photographic array, which included a picture of Hill, and showed it to the teller, Ms. Stanley. Stanley positively identified Hill as the man who presented her with the robbery note. The FBI arrested Hill, who signed a plea agreement with the government and agreed to cooperate.
 
 
 5
 At Doswell's trial Hill was a key government witness. Other government witnesses included Officer Alexander, Ms. Stanley, another teller and a handwriting expert. Doswell testified on his own behalf. He claimed that he was just in the wrong place at the wrong time and had nothing to do with the attempted robbery. On cross-examination, he could not explain the demand note in his handwriting.
 
 
 6
 The jury returned a guilty verdict against Doswell, and he now appeals his conviction and sentence.
 
 II.
 
 7
 In his first assignment of error, Doswell claims that the district court unduly curtailed his cross-examination of James Hill. The district court refused to permit Doswell's lawyer to cross-examine Hill concerning Hill's understanding of how the plea agreement (particularly its treatment of Hill's second degree murder conviction) would affect the court's determination of Hill's guideline range for sentencing. The plea agreement, which was before the jury, specifically excluded any deal about Hill's "criminal history or criminal history category." JA 24-25. To avoid juror confusion, the court would not allow Hill to be cross-examined about his understanding on this one narrow area. JA 63-67. This limited restriction aside, Doswell's lawyer enjoyed wide latitude in his attempt to discredit Hill. For example, under cross-examination, Hill admitted that (1) he was a convicted murderer, a heroin addict, a heroin dealer, a thief and a robber; (2) he had violated parole by possessing heroin; (3) he agreed to cooperate with the government out of self-interest; and (4) he hoped to do less time in prison as a result of his plea bargain. Under the circumstances, we hold that the district court did not abuse its discretion when it kept Doswell's lawyer from questioning Hill about his understanding of how the plea agreement might affect the court's guideline calculations. United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir.1988); see United States v. Greenwood, 796 F.2d 49, 54-55 (4th Cir.1986).
 
 III.
 
 8
 Doswell's second assignment of error involves sentencing. Doswell objects to the district court's determination that he was a career offender. See U.S.S.G. Sec. 4B1.1. Specifically, Doswell says that the district court should have considered the facts underlying his six prior battery convictions before counting them as "crimes of violence." However, Fourth Circuit precedent directs district courts to conduct a legal rather than a factual inquiry in determining whether a prior conviction constitutes a "crime of violence." United States v. Wilson, 951 F.2d 586, 587 (4th Cir.1991), cert. denied, 112 S.Ct. 2294 (1992). The sentencing court's task is simply to read the statutory or common law definitions of the prior crimes to see whether they list, as an element, the "use, attempted use or threatened use of physical force." Id. at 588 (citation omitted). Since battery under Maryland law qualifies as a "crime of violence," the district court properly sentenced Doswell as a career offender.
 
 IV.
 
 9
 Doswell's conviction and sentence are affirmed.
 
 AFFIRMED