# Richmond

EUGENE C. HERCHENBACH v. COMMONWEALTH OF VIRGINIA.

June 10, 1946.

Record No. 3116.

Present, All the Justices.

The opinion states the case.

*Sands, Marks & Sands*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the record of the trial and the judgment of conviction of the accused, who was charged with violation of Michie's Code 1942, sec. 2154 (104), (the "Hit and Run" statute).

The only error assigned is the insufficiency of the evidence to support the judgment.

On September 8, 1945, between 3:00 and 4:00 A. M., the body of Charles Taylor was found approximately a mile and a half east of Disputanta on Route 460. The body was lying on its left side and the feet were within 6 inches of Taylor's motor bike, which was jacked up with a rear flat tire approximately 6 inches south of the south edge of the hard surface, with the body extending at approximately right angles across the highway. The head was mashed to a pulp, and brains and broken bones were scattered on the

highway. The right arm was broken in two places. The sheriff of Prince George County examined the body and later brought the coroner and a State policeman to the scene. A thorough examination revealed no evidence tending to prove who was responsible for the death of decedent. On their return to Petersburg, the ·officers ascertained that three Greyhound buses had passed through Petersburg *en route* to Norfolk. One left Richmond at approximately 1:00 A. M., another at 2:05 A. M., and the third at 3:00 A. M. The police in Norfolk were notified to examine these buses for evidence tending to show that any one of them had been in an accident. The first examination of the three buses revealed no incriminating evidence. Later in the day, a Greyhound mechanic discovered marks resembling blood spots on the right rear tire wall and hair on the wheel of the bus that had let Richmond at 2:05 A. M. The police were called back and verified the fact that the blood stains and hair were human. Thereupon a warrant was sworn out for E. C. Herchenbach, the driver of the bus which passed the scene of the accident at about 3:30 A. M., charging him with involuntary manslaughter.

The involuntary manslaughter charge was dismissed on the preliminary examination, but the accused was held on the charge of violating the "Hit and Run" statute, indicted, tried and convicted.

There is very little conflict in the testimony. Even so, the judgment of conviction by a trial court without a jury is entitled to the same weight as a verdict of a jury approved by the trial court.

The accused contends that the Commonwealth failed to prove that he knew that his bus had been involved in an accident. The Attorney General contends that knowledge is·not essential to a conviction under the statute, and that, even if it is essential, the facts and circumstances are sufficient to charge the accused with knowledge.

The pertinent provisions of the statute are: "The driver of any vehicle involved in an accident resulting in injuries

to or death of any person, or damage to property, shall immediately stop at the scene of such accident or as close thereto as is possible without obstructing traffic and give to the person struck and injured, or to the driver or some other occupant of the vehicle collided with, his name, address, operator's or chauffeur's license number, and the registration number of his vehicle."

■ The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action;—that is, to stop and give the aid and information specified.

■ ■ How can a person perform these affirmative acts unless he knows that his vehicle has struck a person or an object? Knowledge necessarily is an essential element of the crime. This does not mean that the person should have positive knowledge of the extent of the damage or injuries inflicted. It does mean that, in order to be guilty of violating the statute, "the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or collision, then it is the duty of the operator to stop his vehicle." 5 Am. Jur. 921. See annotations in 16 A. L. R. 1425; 66 A. L. R. 1228; 101 A. L. R. 913; *People* v. *Graves*, 74 Cal. App. 415, 240 P. 1019; *People* v. *Hirsch*, 269 N. Y. S. 830; and *State* v. *Verrill*, 120 Me. 41, 112 A. 673.

■ The Attorney General cites *State* v. *Masters*, 106 W. Va. 46, 144 S. E. 718, to support his contention that knowledge is not essential. The indictment in that case was attacked on the ground that it was defective in not alleging that the accused "knowingly" did have an accident. The indictment was drawn in the words of the West Virginia statute. It was held, as we have held in numerous cases, that an indictment stating the crime in the words of the statute

is sufficient. It is true that there is some language in the opinion which would indicate that the conviction might have been upheld although the accused did not know that he had been involved in an accident. Such statements were not essential to the decision of the question involved. They were mere *dicta*.

It is conceded that it was a very foggy night. There were pockets of fog extending to the ground so dense that it was impossible for the operator to see more than a few feet in advance of his vehicle. *At times* the headlights were raised in order for the driver to see as far ahead as possible. When this was done, it was impossible to discern objects on the roadbed immediately in front of the bus.

The coroner, a witness for the Commonwealth, and other witnesses stated that Taylor was lying across the highway at right angles when the wheel of the bus passed over his head. The coroner further stated that it was impossible to tell whether Taylor was living or dead at the time his skull was crushed.

These conceded facts are not sufficient to establish one essential element of the offense, to-wit, that the accused knew his bus had struck decedent.

The dense pockets of fog very probably prevented the driver from seeing a person standing or lying on the road. A heavy bus loaded with 35 passengers and their baggage could have passed over the head or body of a person without the driver or passengers being able to distinguish the jar or jolt, if any, from that made by the wheels of the bus passing over any ordinary defect in the roadbed.

The Attorney General relies upon two bits of evidence to establish knowledge. Two colored men, one on the porch and the other inside the house on his bed, were more than 100 yards from the scene of the accident. Both said that, shortly before the body was found, they saw a bus swerve to the left, check its speed and then move on without stopping. One of the witnesses said that he heard a sharp explosion as if a tire had blown out. The witness inside the house did not hear this alleged explosion. These wit-

nesses were unaccustomed to appearing in court and their testimony is not impressive. One was impeached by former statements made the day after the accident. At any rate, their testimony falls far short of proving that the accused knew his bus had struck or run over a person on the highway.

The other bit of evidence relied upon by the Attorney General is the testimony of the sheriff and the police officer to establish an admission of guilt by the accused. When the accused was turned over to the two officers, they began, quite properly, to interrogate him about the accident and about the movements of his bus. The accused stoutly and consistently denied any knowledge of the accident and any knowledge of the fact that human blood and hair had been found on the rear wheel of his bus. These two witnesses stated that, at one time in the course of the examination, the accused said: "If I tell you the truth I will go to the penitentiary." This statement was followed immediately by the following: "I just haven't hit anybody." Conceding the truthfulness of all parties concerned, the sheriff and the police officer may have put an erroneous construction upon language used by the accused in an intensive interview. This one sentence is contrary to every act of the accused and to every other statement made by him after his arrest. The statement and the circumstances narrated create a mere suspicion which is not enough to sustain the conviction.

The testimony of the accused, which is corroborated by several witnesses and not contradicted by any, is that he drove his bus to Norfolk in the usual manner, discharged his 35 passengers at the bus terminal, and took his bus to the Greyhound garage. As he drove into the garage or parking lot, he met a bus coming out driven by a friend. He asked the friend to wait a minute and let him ride out with him. The accused immediately parked his bus and rode out to the terminal with the friend. He then went to sleep until time to take charge of another bus leaving for Richmond at 11:00 A. M. He arrived in Richmond at 2:20 P. M., immediately

went to his room and was in bed at 4:30 when the officers arrived with a warrant for his arrest.

If the accused knew and desired to conceal the fact that his bus had struck a person or an object, he had every opportunity to remove the blood stains and hair from the right rear wheel. He made no attempt to do this.

The judgment of conviction is reversed and the prosecution dismissed.

*Reversed and dismissed.*