**UNITED STATES of America**

**v.**

**Dominique Lamont CARTER, Defendant.**

**No. CRIM.A. 4:04CR48.**

United States District Court, E.D. Virginia, Newport News Division.

Dec. 10, 2004.

Eric M. Hurt, United States Attorney's Office, Newport News, VA, for Plaintiff.

Riley Henderson Ross, III, Office of the Federal Public Defender, Norfolk, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

Presently before the Court is the Government's objection to the offense level and criminal history calculation contained in Defendant Dominique Lamont Carter's Presentence Investigation Report. The issue presented for resolution, a question of first impression within this judicial circuit, is whether a conviction for "hit and run" in the Commonwealth of Virginia, Va.Code § 46.2–894, constitutes a crime of violence for purposes of enhancing a defendant to career offender status under United States Sentencing Guideline § 4B1.1. It does not. The Government's objection is therefore **OVERRULED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Posture

Defendant Dominique Lamont Carter pled guilty to Conspiracy to Possess with Intent to Distribute Five (5) Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 on May 26, 2004. The offense, a Class A Felony, carries with it a statutory penalty of ten (10) years to life imprisonment and at least five (5) years of supervised release. 21 U.S.C. § 841(b)(1)(A). To aid the Court in determining the appropriate term of imprisonment pursuant to the United States Sentencing Guidelines, the United States Probation Office prepared a Presentence Investigation Report ("PIR") summarizing Carter's personal background, the facts related to the instant offense, and his criminal history. The PIR was completed on September 1, 2004 and a disposition hearing was originally scheduled for October 18, 2004. Both parties leveled objections to the PIR in advance of the October 18, 2004 hearing, though only the merits of the Government's objection is addressed in this Memorandum Opinion and Order.

As Carter's objections implicated the United States Supreme Court's recent de-

cision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and since a petition for a writ of certiorari was granted in *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert. granted*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), a case that will most likely resolve controversies surrounding the United States Sentencing Guidelines, the Court rescheduled sentencing for December 7, 2004 in the hopes that *Booker* would be resolved by the end of November. By agreement of the parties, the hearing was again rescheduled for December 9, 2004. Given that the United States Supreme Court had not issued its opinion by December 9, 2004, the date of the rescheduled disposition hearing, the Court determined that it would follow the United States Court of Appeals for the Fourth Circuit's direction in *United States v. Hammoud*, 381 F.3d 316 (4th Cir.2004) to "continue sentencing defendants in accordance with the guidelines, as was the practice before *Blakely*." Therefore, the December 9, 2004 disposition hearing went forward as scheduled and the Court proceeded as if *Blakely* did not apply.

### B. The Presentence Investigation Report

Carter's total adjusted offense level is a 31. Wksht. D, Item 3. The PIR attributes Carter with 17.4 kilograms of powder cocaine, resulting in a base offense level of 34. *See* PIR Wksht. A, Item 1; U.S.S.G. § 2D1.1(c)(3). Upon deduction of three (3) points for accepting responsibility for the instant offense, *see* PIR ¶ 32; PIR Wksht. D, Item 2; U.S.S.G. § 3E1.1, Carter's total adjusted offense level, as calculated in the PIR, is 31. The Court confirmed this offense level over Carter's objection pursuant to *Blakely*. That objection was resolved at the December 9, 2004 disposition hearing and is not addressed in this Memorandum Opinion and Order.[1]

As regards Carter's criminal history, the PIR reveals that he has several prior juvenile and adult criminal convictions. Only two adult criminal convictions are relevant to the issue presently before the Court. The first of the relevant convictions was a Virginia offense for Hit and Run in violation of Va.Code. § 46.2–894. The offense occurred on January 16, 1991, when Carter was 16 years old. According to the PIR, Carter, who was operating a Chevrolet van, ran a red light, struck a Toyota Corolla, and fled. The operator of the Corolla, a 22–year old woman, died at the scene due to injuries sustained in the accident. Carter was taken into custody on January 23, 1991 and was subsequently charged with Involuntary Manslaughter in the Newport News (Virginia) Juvenile and Domestic Relations Court. On April 25, 1991, the Commonwealth's Attorney nolle

---

1. Relying on the United States Supreme Court's recent decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (June 24, 2004), Carter contends that he should only be attributed with the quantity of powder cocaine to which he specifically admitted. That amount is less than fifteen (15) kilograms. Accordingly, Carter argues that his base offense level should be 32, U.S.S.G. § 2D1.1(c)(4), resulting in a total offense level of 29 upon reduction of three (3) points for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. However, Carter concedes that, under the standard of proof for sentencing factors established prior to *Blakely*, the Government could satisfy its burden of attributing him with more than fifteen (15) kilograms, which results in a total adjusted offense level of 31, as calculated in the PIR.

As the Court has been instructed by the United States Court of Appeals for the Fourth Circuit to proceed as though *Blakely* does not apply to the Sentencing Guidelines, *United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004), this objection was resolved in favor of the Government. However, Carter's *Blakely* objection is preserved for appeal.

prossed the Involuntary Manslaughter charge and entered a new charge of Leaving the Scene of an Accident, a Felony. Without objection, that charge was certified to the Newport News (Virginia) Circuit Court, where it was amended to Hit and Run. Carter was eventually convicted and sentenced as a Youthful Offender. *See* PIR ¶ 40.

The other prior conviction relevant to the issue presently before the Court is Carter's July 11, 1997 federal conviction for Conspiracy to Possess with the Intent to Distribute Five (5) Kilograms or More of a Detectable Amount of Cocaine on July 11, 1997 in the Eastern District of Virginia. Carter was imprisoned for this conviction until December 31, 2001, when he began serving a term of supervised release. *See* PIR ¶ 42.

The PIR assigns three (3) criminal history points for each of these convictions. PIR Wksht. C, Item 3 (Table). Since the offense for which Carter is now being sentenced was committed while he was on supervised release for the July 11, 1997 federal drug conviction, he was assigned three (3) additional criminal history points, bringing his total criminal history points to nine (9). PIR Wksht. C, Items 5, 6, and 8. This results in a criminal history category of IV. PIR Wksht. C, Item 9. Coupled with an offense level of 31, the PIR concludes that the range of imprisonment to which Carter should be sentenced is 151 to 188 months. U.S.S.G. § 5A (Table).

## C. The Government's Objection to the PIR

The Government objects to the criminal history and offense level calculation in the PIR. The Government contends that Carter is a career offender pursuant to § 4B1.1 of the Guidelines, which states in relevant part that "[a] defendant is a career offender if ... the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id.* There is no dispute that Carter's July 11, 1997 federal drug conviction constitutes a prior controlled substance offense. The Government contends that Carter's April 25, 1991 hit and run conviction in Virginia constitutes a crime of violence, which would render him a career offender for sentencing purposes. The PIR determined that hit and run is not a crime of violence. *See* PIR § 46.

If Carter's hit and run offense is a crime of violence and he is therefore deemed a career offender, the resulting criminal history category would be a VI, U.S.S.G. § 4B1.1(b), and the base offense level would be a 37, since the present drug conviction carries a statutory maximum penalty of life in prison. *Id.* § 4B1.1(b)(A); *see also* 21 U.S.C. § 841(b)(1)(A). After subtracting three (3) offense levels for acceptance of responsibility, U.S.S.G. § 3E1.1, the total adjusted offense level would be 34. This would result in a sentencing range of imprisonment, based on a 34/VI, of 262 to 327 months under the Guidelines. *Id.* § 5A (Table). Thus, resolution of this objection is of critical import to the determination of Carter's sentence.

Due to the significance of this objection, the Court ordered the parties to submit memoranda in addition to their original PIR objections on the question whether the offense of hit and run in Virginia constitutes a crime of violence. The Court instructed the parties to devote particular attention to a case then pending before the United States Supreme Court, *Leocal v. Ashcroft,* 540 U.S. 1176, 124 S.Ct. 1405, 158 L.Ed.2d 76 (2004), which involved a similar question of law. *Leocal* has since been decided, —— U.S. ——, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), and the parties have submitted their respective memoran-

da. The Court dispensed with oral argument on the instant objection because the facts and legal contentions are adequately presented in the parties' memoranda and argument would not aid in the decisional process. The Court informed the parties that the Government's objection was overruled at the December 9, 2004 disposition hearing, subject to the statement of reasons in this Memorandum Opinion and Order.

## II. ANALYSIS

### A. Standard of Review

The question presented by the Government's objection to the PIR is whether a conviction for hit and run in the Commonwealth of Virginia, Va.Code § 46.2–894, constitutes a crime of violence under the United States Sentencing Guidelines. The United States Sentencing Guidelines defines a crime of violence as follows:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Part one of the Guidelines definition is commonly referred to as the "use" clause, whereas part two is referred to as the "otherwise" clause, a catchall affording the possibility that an offense that does not contain the use of force as an element may be deemed a crime of violence.

 To determine whether a prior offense constitutes a crime of violence under the Sentencing Guidelines, courts must "use the required categorical approach, which takes into account only the definition of the offense and the fact of conviction." *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir.2002) (citing *United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir.1998); *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir.1991)). If the statutory language defining the offense is ambiguous, courts "may discover the nature of the offense for which the defendant was actually convicted by looking at the charging document and the jury instructions." *Id.* (citation omitted). However, the analysis must not extend any further than the fact of conviction, because if courts were to "attempt to determine the facts of each predicate offense, sentencing would become a series of minitrials for each prior offense, which would be both costly and unreliable." *Id.* Thus, in essence, resolving whether an offense is a crime of violence is simply a matter of statutory interpretation.

### B. Discussion

#### 1. Virginia's Hit and Run Statute

 Virginia's hit and run statute reads as follows:

> The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible .... The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

Va.Code § 46.2–894. Accordingly, the requisite elements to establish a conviction under the statute are as follows: " 'the driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known.' " *Cottee v. Commonwealth,* 31 Va.App. 546, 558, 525 S.E.2d 25, 31 (2000) (quoting *Herchenbach v. Commonwealth,* 185 Va. 217, 220, 38 S.E.2d 328, 329 (1946)).

■ By its plain terms, and the Government does not argue to the contrary, Virginia's hit and run statute does not contain as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). In fact, to violate the statute, a person need not have *used* any force at all; rather, a person need only be involved in a motor vehicle accident where an injury occurs and thereafter fail to stop and render assistance. Thus, hit and run in Virginia is not a crime of violence under § 4B1.2(a)(1), the "use" provision.

The Government instead contends that hit and run qualifies as a crime of violence under § 4B1.2(a)(2), the "otherwise," or catchall provision in the Guidelines. The Government seizes on the words "killed or injured" as evidence that hit and run "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). For much the same reason, however, this argument is unpersuasive.

According to the Supreme Court of Virginia, "[t]he gravamen of [hit and run] is the flight from the scene and failure to give succor or aid to the injured party." *Blankenship v. Commonwealth,* 184 Va. 495, 500, 35 S.E.2d 760, 762 (Va.1945). More specifically,

> None of the crimes charged is manslaughter. The offense is the failure to stop the automobile involved at the scene of the accidents, to furnish the information required and to render assistance to the parties injured. This statutory offense is a felony. The acts constituting the offense do not commence until after the injury or damages has been inflicted.

*James v. Commonwealth,* 178 Va. 28, 34, 16 S.E.2d 296, 298–99 (1941) (citing *Henson v. Commonwealth,* 165 Va. 829, 183 S.E. 438 (1936)). These cases, though dated, make clear that, at least in Virginia, the offense of hit and run does not prohibit violent behavior. Instead, the statute punishes the failure to stop and render assistance after a motor vehicle accident. Indeed, the statute is not a prohibition of conduct so much as it imposes a duty to stop on a person involved in an accident. *See Herchenbach,* 185 Va. at 220, 38 S.E.2d at 329 ("The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action;—that is, to stop and give the aid and information specified."). Importantly, this duty is imposed regardless of a person's culpability in the motor vehicle accident: even a person involved in an accident caused by another driver is required to stop and render assistance, lest he be guilty of hit and run. Categorically, by the statute's own words and the interpretations of Virginia's own courts, the offense of hit and run is not a crime of violence. More accurately, hit and run is a crime of irresponsibility.

### 2. The Virginia Statutory Scheme

This interpretation is supported by the statute's location within the larger context of Virginia's motor vehicle and criminal regulatory scheme. *See Orquera v. Ashcroft,* 357 F.3d 413, 418 (4th Cir.2003) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340–41, 117 S.Ct. 843, 136

L.Ed.2d 808 (1997)) (ascertaining a statute's plain meaning requires courts to examine not only " 'the language itself, [but also] the specific context in which that language is used, and the broader context of the statute as a whole.' ").

The hit and run statute is codified in Virginia Code Title 46, which is captioned "Motor Vehicles." Within Title 46, it is situated in Chapter 8, entitled "Traffic," at Article 11, which contains statutes regulating "Accidents." Among the other regulations contained in Title 46, Chapter 8, Article 11, are such provisions regulating the duty of certain persons accompanying a driver to report an accident, Va.Code § 46.2–895, the duties of drivers involving damage only to property, *id.* § 46.2–896, and penalties for failing to leave the scene of an accident upon direction from a police officer to do so. *Id.* § 46.2–860. In contrast, Article 7 of Chapter 8, which contains laws concerning reckless driving and improper driving, includes such traffic violations as "reckless driving," Va.Code § 46.2–852, "passing two vehicles abreast," *id.* 46.2–856, "passing a stopped school bus," *id.* § 46.2–859, and "failing to give proper signals," *id.* § 46.2–860. The provisions in Article 7 regulate conduct related to driving so as to *prevent* accidents, whereas the provisions in Article 11 regulate conduct once an accident has *already occurred.* This confirms that the essence of a hit and run violation is the failure to stop and render assistance, not the conduct leading to the accident itself.

If the purpose of the hit and run statute was to prohibit violent criminal conduct related to operation of a motor vehicle, it would have been more appropriate for the Virginia legislature to place it within Article 7; better yet, the statute would have been placed within Virginia's general criminal regulations, which are codified in Title 18. *See* 2B Sutherland Statutory Construction § 53:1 (6th ed.) ("[M]ost legislative enactments are arranged according to logical classification schemes into statutory systems of varying scope."). Title 18 contains laws regarding violent crimes such as capital murder, *id.* § 18.2–31, first and second degree murder, *id.* § 18.2–32, felony homicide, *id.* § 18.2–33, voluntary and involuntary manslaughter, *id.* § 18.2–35 and 36, robbery, *id.* § 18.2–58, arson, *id.* § 18.2–77, and burglary. *Id.* § 18.2–90. It is settled that all of these offenses constitute crimes of violence. U.S.S.G. § 4B1.2, app. note 1. It is no accident that hit and run is codified among Virginia's traffic regulations and not among the Commonwealth's criminal regulations prohibiting violent crimes: Virginia's motor vehicle and criminal regulatory scheme confirm the hit and run statute's plain terms.

Unquestionably, there are circumstances under which the operation of a motor vehicle could lead to criminal charges of manslaughter or perhaps even murder. However, Carter was charged with neither. He was charged with hit and run, which according to the unambiguous language contained in § 46.2–894, simply is not a crime of violence.

### 3. *Leocal v. Ashcroft* and Crimes of Violence in General

This conclusion is bolstered by the United States Supreme Court's recent unanimous decision in *Leocal v. Ashcroft,* —— U.S. ——, 125 S.Ct. 377, 160 L.Ed.2d 377 (2004), where the question presented was whether the offense "driving under the influence" ("DUI"), as defined by statute in Florida, constitutes a crime of violence pursuant to the federal statutory definition of the phrase in the Comprehensive Crime Control Act of 1984 (the "Crime Control Act"). The definition of "crime of violence" in the Crime Control Act, *see* 18 U.S.C. § 16, is similar, though not identi-

cal, to the definition contained in the United States Sentencing Guidelines.[2] Due to the similarity, court interpretations of § 16 are, at least, persuasive authority for interpreting § 4B1.2 of the Sentencing Guidelines. *Cf. Pierce,* 278 F.3d at 286 ("The principles for application of this approach [to interpreting § 4B1.2] were adopted from the analogous analysis prescribed in *Taylor v. United States,* 495 U.S. 575, 588–90, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which the Supreme Court applied the same categorical approach to determine whether burglary was a predicate crime of violence for armed-career-offender status under 18 U.S.C. § 924(e).").

In *Leocal,* the Supreme Court determined that 18 U.S.C. § 16's analogous catchall provision, providing that an offense is a crime of violence if it "involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 16(b), "relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime." —— U.S. at ——, 125 S.Ct. at 383. The line between violent and other crimes is therefore drawn between volitional conduct on the one hand, and negligent or accidental conduct on the other, since crimes of violence or those offenses which "requir[e] a higher *mens rea* than … merely accidental or negligent conduct." *Id.* Furthermore, the Supreme Court emphasized that crimes of violence represent "a category of violent, active crimes," such that "[i]nterpreting § 16 to encompass accidental or negligent conduct

would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Id.* Accordingly, since the offense of DUI encompasses accidental and negligent conduct, and since it does not belong to a category of offenses generally regarded as violent, the Supreme Court held that it is not a crime of violence.

Similarly, including Virginia's hit and run offense within the rubric of crimes of violence leaves the line between violent and ordinary crimes virtually indistinguishable. While Virginia's hit and run statute encompasses volitional physical conduct, it also includes accidental and negligent conduct that simply does not constitute a crime of violence.

The Government contends that the line *Leocal* draws between volitional and negligent conduct is inapposite to § 4B1.2 because the United States Court of Appeals for the Fourth Circuit has found crimes such as involuntary manslaughter, which encompasses negligent behavior, *United States v. Payton,* 28 F.3d 17 (4th Cir.1994), and escape from custody, where no actual force is used but where the potential for injury is great, *United States v. Hairston,* 71 F.3d 115 (4th Cir.1995), to be crimes of violence under the Guidelines. However, those cases are readily distinguishable from the present one and are consistent with *Leocal's* logic. First, involuntary manslaughter is a crime of violence under the Guidelines because the application notes to § 4B1.2, while not delineating between voluntary and involuntary manslaughter, specifically include manslaughter in its list of offenses already accepted

2. According to 18 U.S.C. § 16:
 The term "crime of violence" means—
 (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

 (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

as crimes of violence. *Payton*, 28 F.3d at 19. Unlike manslaughter, hit and run is not included in the application notes.

Second, escape from custody is not a crime of violence due to the risk of *accidental* injury that may occur to another person in the course of a prison break, but rather because an escapee confronted with an obstacle to escape "may *choose* to dispel the interference by means of physical force." *Hairston*, 71 F.3d at 119 (emphasis added). In other words, the risk of physical harm that results from an attempted escape from custody is the possibility that the escapee might, by his own volition, employ physical force to complete the escape. Conversely, hit and run involves no choice as regards the use of physical force—it involves the choice whether to flee or remain at the scene of a car accident.

Failing to stop and render assistance after an accident may be irresponsible. It may even be heartless. Under the facts of the hit and run in which Carter was involved, it appears to be both. But under the law, hit and run in Virginia does not fall within the category of violent offenses for which the Guidelines provide significantly enhanced sentences.

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Government's objection to the Presentence Investigation Report contending that a conviction for hit and run in Virginia should qualify as a crime of violence is **OVER-RULED**. Since Defendant is not a career offender, and for the additional reasons stated in the record transcript of the December 9, 2004 disposition hearing, *see also supra* note 1, Defendant's total adjusted offense level is 31 and his criminal history category is IV, which yields an imprisonment range of 151 to 188 months. Based on the severity of the offense, the aggravating and mitigating factors described in the Presentence Investigation Report, and the reasons stated in the record transcript of the December 9, 2004 disposition hearing, Defendant was sentenced to a term of imprisonment of 169 months, a sentence at the middle of the Guidelines range.

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Order to counsel for both parties and the United States Probation Officer handling this matter.

**IT IS SO ORDERED.**