*769 BENTON, J.,
concurring, in part, and dissenting, in part.
For the reasons given in the majority opinion, I concur in the holding that the evidence was not sufficient to support two separate violations of Code § 46.2-894. I would also hold, however, that the evidence was insufficient to prove Bo Jason Tooke was aware that any accident occurred involving an injury or damaged property.
The sole issue is whether the evidence proved Tooke knew the van had crashed. The testimony and evidence about the events are reasonably consistent. Dennis Buchanan testified he drove northbound behind Tooke for about six miles before the incident. In that distance, he saw Tooke’s car stray out of the travel lane to the left twice and to the right twice. As Buchanan watched Tooke’s car, he concluded that Tooke was having some difficulty because Buchanan said to himself “this guy is going to go off the road and hit a tree and kill himself.”
When Tooke and Buchanan approached a northbound truck ahead of Tooke, Tooke’s car moved “all of a sudden ... out in the fast lane.” Buchanan saw a van approaching in the southbound direction “fifty to seventy-five yards away.” Tooke’s car immediately came back into the northbound travel lane behind the truck. No evidence proved Tooke’s car accelerated when it moved into the opposite travel lane. Although Buchanan surmised that Tooke suddenly moved “to pass this truck,” he testified that Tooke only “stayed in the lane for five to ten seconds” before moving back to avoid the oncoming van. He also testified that Tooke’s car “never did pass the truck” and that they “weren’t speeding.”
As Tooke’s car came back into the northbound lane, the van that was traveling southbound moved onto the shoulder of the highway and passed Tooke’s car. No collision or contact occurred between the two vehicles. Buchanan testified that the van and Tooke’s car passed “within a couple of feet” and that Tooke continued northbound on the highway. Buchanan followed Tooke and observed that Tooke drove “perfeet[ly]” from that point.
*770 This evidence failed to prove Tooke knew that the driver lost control of the van and crashed after returning to the southbound lane. “Knowledge necessarily is an essential element of the crime----‘[I]t must be present in [the driver’s] mind that there has been an injury; and then, with that in mind, he must deliberately go away.’ ” Herchenbach v. Commonwealth, 185 Va. 217, 220, 38 S.E.2d 328, 329 (1946) (citation omitted). Thus, to prove the driver “guilty of violating the statute,” the evidence must prove beyond a reasonable doubt that “‘the driver [was] aware that harm has been done.’ ” Id. (citation omitted).
I believe the majority incorrectly concludes that the circumstantial evidence in this case excludes every reasonable hypothesis of Tooke’s innocence. It is not sufficient that two drivers who were behind Tooke, and thus closer to the van when it crashed, knew that an accident occurred. To convict Tooke based on circumstantial evidence, the Commonwealth must “exclude all reasonable conclusions inconsistent with that of guilt.” LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950); see also Commonwealth v. Smith, 259 Va. 780, 783, 529 S.E.2d 78, 79 (2000).
The trial judge found that “the accident had already begun before [Tooke] knew his vehicle was in the wrong southbound lane and headed back intd the northbound lane.” From that premise, the judge concluded the evidence proved Tooke knew of the ensuing events because “he knew of this close encounter.” This conclusion is not supported by the evidence.
Buchanan’s testimony suggests that Tooke likely did not see the events that occurred after the near collision. Buchanan testified that he watched the van in his rearview mirror after the near collision. As Buchanan continued northward, he “saw the van come back [onto the road] and ... said, good, the van made it.” Thus, Buchanan, who was fully alert, initially believed the near collision had no consequential effect. Only as Tooke and Buchanan continued northbound on the highway did Buchanan notice that the van continued to move across the highway. Buchanan testified that after he saw the *771 van return to the highway in its proper lane of travel, the southbound lane, he then saw it move “into the northbound lane” and then return to the southbound lane before leaving the highway and hitting trees.
No evidence proved that Tooke saw the van cross from the southbound lane into the northbound lane, return to the southbound lane, and then leave the highway before crashing into the trees. As these events were occurring, at least one other vehicle was behind Buchanan’s vehicle. The presence of Buchanan’s vehicle behind Tooke and another vehicle behind Buchanan’s vehicle, all moving at fifty-five miles per hour, suggests Tooke may not have been in a position to see the van after it returned to its travel lane. Certainly, Buchanan’s expression of relief that the van was not in difficulty when it came back onto the roadway, provides a reasonable hypothesis that Tooke had reason to believe the incident had not caused injury or damage to the van.
Additionally, no objective facts indicate Tooke was aware the van crashed. Buchanan did not testify that Tooke’s brake lights illuminated. Buchanan also did not testify that Tooke’s speed momentarily dropped below the speed limit. Thus, the evidence does not show Tooke had even a momentary hesitation or awareness that something untoward later happened. Furthermore, the evidence did not establish the contour of the highway beyond “the close encounter” or the type of vehicles behind Tooke. In other words, the evidence failed to prove the highway was straight, giving a clear line of sight as Tooke and Buchanan continued northward, or to prove Tooke could have had an unobstructed view to his rear.
Based on Buchanan’s telephone call as he followed Tooke, a deputy sheriff arrested Tooke and took him back to the scene of the incident. The deputy sheriff testified that Tooke “said ... the only thing [he remembered was] being tired and swerving.” The deputy sheriff also testified Tooke said he saw no accident. The deputy sheriff did not testify he detected any traces of alcohol as he questioned Tooke. Consistent with the Commonwealth’s evidence, Tooke testified at trial *772 that he was going home from work, became tired, and began to “nod off.” He explained that he “nodded off to sleep” and then “came to [his] senses, [seeing] traffic coming [toward him] because [he] was in the wrong lane.” He corrected his swerve and continued driving, now alert after the near collision.
“It is, of course, a truism of the criminal law that evidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture.” Smith v. Commonwealth, 192 Va. 453, 461, 65 S.E.2d 528, 533 (1951). “The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.” Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970). The evidence merely created a suspicion that Tooke had knowledge the van later collided with a tree; however, “it is not sufficient to create a suspicion or probability of guilt, [because] the evidence must establish the guilt of an accused beyond a reasonable doubt.” Id. at 110, 175 S.E.2d at 276.
While Tooke may have committed a driving offense, the Commonwealth’s evidence failed to prove he violated Code § 46.2-894 (duty to report information and render assistance when a driver is involved in an accident in which injury or damage occurs). Simply put, the evidence failed to prove Tooke knew the near collision resulted in harm, a necessary element of the crime. Herchenbach, 185 Va. at 220, 38 S.E.2d at 329. For these reasons, I would reverse both convictions and dismiss the indictments.