# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Chaney
Argued by teleconference


VERNON EVANDER GREEN, II

                                                           MEMORANDUM OPINION[*] BY
v.       Record No. 1390-23-1                JUDGE DANIEL E. ORTIZ
                                                            AUGUST 27, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Vernon Evander Green, II, *pro se.*

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Vernon Evander Green, II appeals his convictions, following a jury trial, for second-degree murder and felony hit and run in violation of Code §§ 18.2-32 and 46.2-894, respectively. On appeal, Green first challenges the sufficiency of the evidence for each conviction. He further argues that the circuit court erred in denying his motion to set aside the jury verdict relating to his *Brady*[1] violation and jury instruction arguments. Lastly, Green contends the circuit court erred in granting the Commonwealth's motion *in limine* as to Green's prior bad acts. Finding that the evidence is sufficient and that the circuit court did not err, we affirm the convictions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

BACKGROUND

On January 23, 2020, at approximately 7:40 p.m., Detective Barry A. Kidder, while working in the surveillance room in the Newport News Police Department, observed a gold-colored Mercedes parked at the Monitor Merrimac Overlook. Detective Kidder observed two passengers in the car. The driver appeared to be rolling a marijuana cigarette. Based on his observation, Detective Kidder asked for any available units to respond to the scene for a suspected driving while intoxicated violation.

Officers Nicholas Meier and Katherine Thyne responded to the scene.[2] When Officer Meier approached the passenger side, he noticed the smell of marijuana emanating from the car. When the female passenger opened the door, Officer Meier introduced himself and advised both of them that they were going to be detained for a narcotics investigation. The female passenger complied, got out of the car, and Officer Meier placed her in handcuffs. While this was occurring, Officer Thyne was speaking to the driver, Green. Officer Meier then joined Officer Thyne in instructing Green to step out of the car. Green questioned the officers as to why he was being detained. Officer Meier told Green he would "explain everything" once Green got out of the car, but he continued to refuse to exit the car.

Both officers began attempting to physically remove Green from the vehicle, but he was holding on to the steering wheel with both hands. Officer Meier was closest to the open driver's side door, and Officer Thyne was to his right—their shoulders were touching. As they tried to remove him, Green's left hand appeared to be moving to the center console, and his foot moved from the floorboard up to the gas pedal. Officer Meier heard the engine "rev," and Green began to "take off." Officer Meier managed to step away, but Officer Thyne began running alongside

---

[2] The events described herein were presented to the jury through witness and expert testimony, as well as the body-worn footage from Officers Meier, Thyne, and McKinley.

the vehicle, and as the vehicle increased speed, it appeared that she "started to fall forward."[3] Officer Meier estimated the car was going 20-25 miles per hour. Officer Meier ran to his car to follow the fleeing vehicle but heard a sound like "a metal-on-metal type collision." Green had crossed the oncoming lane of traffic, went over a curb, hit a street sign, and then crashed the car into a tree. The car was found "perpendicular to the roadway," off the road in "the front yards of several houses." Officer Meier ran to Officer Thyne, who was lying on the ground. He began to administer first-aid and called for assistance. Officer Meier observed a "large amount of debris" on the ground and in the roadway, but Green could not be found at the scene of the accident. Emergency medical personnel arrived and transported Officer Thyne to the hospital, where she was pronounced dead.

Green was found and detained a block away from the crash. When a patrolling officer found Green, he had his hands up as he approached the officer. The officer asked him if he ran from the vehicle, and Green answered, "Yes, sir." While other officers canvassed the area, they found a blue and black bag, matching the description of a bag Officer Meier saw in the Mercedes. Inside the bag, officers found money "bound-in bands," a firearm, and Green's identification.

Prior to trial, Green filed a motion *in limine* to prevent the Commonwealth from presenting evidence that Green is a convicted felon, pleaded guilty to a federal charge of possession of a firearm by a convicted felon, and that he was on bond for charges involving a bank robbery at the time of the incident. The Commonwealth presented its own motion to admit the evidence, asserting that Green's prior bad acts were relevant to show motive. The circuit court denied Green's motion "as it relate[d] to the defendant being a convicted felon" and

---

[3] Detective Kidder also testified to witnessing "[Officer Thyne] get caught," while "Officer Meier was able to break free and run" from the vehicle.

"reserve[d] ruling on all other grounds stated in the motion in limine." During a pre-trial hearing, the Commonwealth stated that it would only stipulate that Green was a felon and was precluded from having a firearm, rather than introduce a copy of his convictions or name what the convictions were.

At trial, the Commonwealth entered the body-worn footage of Officers Meier, Thyne, and the patrolling officer who apprehended Green. The Commonwealth also called Corey Trowell, Green's cellmate in jail, to testify. Trowell testified that Green told him he sped off because he had "a bunch of money and a gun in the car, and he had already did [sic] 15 years. He wasn't trying to go back to prison." Trowell also stated that Green told him that "he didn't know what happened." He further conceded that he agreed to testify in hopes of receiving a reduced sentence.

The Commonwealth then called Corporal Jason Moyer to testify about his investigation of the crash scene. Moyer testified that the vehicle's left side hit a tree. He also testified to the yaw marks left by the vehicle's tires. These marks indicated the car was sliding sideways, while the tires were still spinning after hitting the tree. This was caused by acceleration. Leading up to hitting the tree, the tire marks indicated that the vehicle went up and into the grass, passed the sidewalk, through a sidewalk barrier, and then came to rest in the front yard of a house. Based on Officer Thyne's body-worn footage, Moyer determined that the speed of the Mercedes before impact was "30.24 miles per hour." On cross-examination, Moyer conceded that he had written two reports and in one of the reports he believed the tire marks indicated Green had braked, however he testified that the yaw marks indicated that after hitting the tree, "the operator of the vehicle was still pressing the gas." Moyer also stated that he found no indication that Green hit anything else or made any erratic movements prior to and after hitting the tree, thus "he was in control of that vehicle."

Dr. Wendy Gunther, the assistant chief medical examiner, testified as to Officer Thyne's injuries and death. Dr. Gunther testified that Officer Thyne had several lacerations and bruises on her face, as well as missing teeth from a "really heavy impact." Her pelvic bones were fractured, and her left arm was broken. Both were caused by "a high energy impact." Dr. Gunther also testified that Officer Thyne experienced "dicing" marks, which are caused by fragments of glass blown out from a car window. Dr. Gunther stated that her body was "really crushed and torn and pulled apart" and that she died because of "multiple blunt trauma."

After the Commonwealth rested its case-in-chief, Green made a motion to strike. The court rejected the motion on both the second-degree murder charge and the hit-and-run charge.

Green then testified in his defense. He stated that when the officers were asking him to get out of the car, he was "confused" and refused because he didn't understand "what was going on." He stated that he had to "remove [him]self from this situation . . . [s]o [he] started the car and tried to leave." After he took off, he felt "Officer Thyne on [him]" and knew she was next to him as he drove around her vehicle in the parking lot. Green testified that after he "got outside the exit," he "lost control of the vehicle and it veered onto the sidewalk." The last thing he remembered "was the air bag being deployed and sitting in the yard," after the initial impact. He eventually got out of the car, grabbed the bag with the firearm in it, and ran. He testified to never seeing Officer Thyne and the first he heard of her dying was when the magistrate read him the charges.

At the conclusion of trial, Green renewed his motion to strike. The circuit court denied the motion again. All jury instructions were agreed upon by both parties. The jury convicted Green of second-degree murder and felony hit and run.

After the trial, Green filed several motions as a self-represented litigant, including a motion to set aside the verdict. The court held a hearing on Green's post-trial motions on May

12, 2023. Green argued there was insufficient evidence to show malice for the second-degree murder and that he did not use the car as a deadly weapon. He also argued he had no knowledge that Officer Thyne was hurt, and thus his felony hit-and-run conviction was error. Green next asserted that the Commonwealth committed a *Brady* violation by failing to disclose a transcript from a federal sentencing proceeding relating to his guilty plea in federal court for possession of a firearm and marijuana. Green also argued that the court should have instructed the jury as to the knowledge and proximate causation elements of the hit-and-run conviction. The court denied the motion to set aside the verdict. Green was sentenced to 40 years for the second-degree murder conviction and 10 years for the felony hit and run. Green now appeals.

ANALYSIS

I. Sufficiency of the Evidence

When reviewing a challenge to the sufficiency of the evidence, this Court considers "the evidence in the light most favorable to the Commonwealth," the prevailing party below, and reverses the judgment of the circuit court only "when its decision is plainly wrong or without evidence to support it." *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014). "[I]f there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013)). Rather, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010).

## A. Second-Degree Murder

Green first argues that the evidence is insufficient to sustain his second-degree murder conviction because the Commonwealth failed to produce evidence indicating Officer Thyne was trapped and dragged by the vehicle. This is an inaccurate reading of the record. The Commonwealth put forth testimony from Officer Meier and Detective Kidder that indicated that Officer Thyne was trapped and dragged by Green's vehicle. Officer Meier stated that Officer Thyne was "running next to the vehicle, but as the vehicle continued to speed up, it appeared that she wasn't able to continue to run . . . and it appeared that she started to fall forward." "[H]er feet went behind her, and her head started to duck down." He also testified to witnessing Officer Thyne's "feet . . . start[] to drag along the ground." Detective Kidder testified that Officer Thyne got "caught," while Officer Meier was "able to break free and run" when the vehicle took off. The jury also had Officer Thyne's own body-worn footage and Dr. Gunther's testimony of Officer Thyne's injuries.

Accordingly, viewed in the light most favorable to the Commonwealth and under the high degree of deference granted to factfinding, the evidence is sufficient to infer that Officer Thyne was trapped and dragged by the eluding vehicle. *See Sullivan*, 280 Va. at 676 (finding that this deferential appellate standard "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved").

Green next challenges the sufficiency of his conviction on the basis that the malice requirement was not met. Malice is a requisite element for murder. *See Essex v. Commonwealth*, 228 Va. 273, 280 (1984); *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016) ("Second-degree murder . . . is defined as a malicious killing."). "In order to evaluate the crime to second-degree murder, the defendant must be shown to have wil[l]fully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm." *Essex*,

228 Va. at 280-81 ("[O]ne who deliberately drives a car into a crowd of people at a high speed, not intending to kill or injure any particular person, but rather seeking the perverse thrill of terrifying them and causing them to scatter, might be convicted of second-degree murder if death results."). "Whether the defendant acted with malice is a question for the trier of fact." *Id.* at 280. "[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex*, 228 Va. at 280). "Implied malice exists when *any purposeful, cruel act* is committed by one individual against another without any, or without great provocation." *Pugh v. Commonwealth*, 223 Va. 663, 668 (1982) (emphasis added). "In determining whether malice may be implied from conduct, we look for actions reflecting 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Flanders v. Commonwealth*, 298 Va. 345, 358 (2020) (quoting *Watson-Scott*, 298 Va. at 256). Additionally, "malice may be implied from use of a deadly weapon." *Id.* (quoting *Watson-Scott*, 298 Va. at 256). We have recognized that "[a] motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." *Essex*, 228 Va. at 281.

Viewing the evidence in the light most favorable to the Commonwealth, it was sufficient to show that Green acted with malice. Green drove away knowing that both officers were in close proximity as they attempted to remove him from the vehicle. He testified to feeling "Officer Thyne[] on" and "next" to him. Green's speed before hitting the tree was estimated to be 30 miles per hour. Additionally, the Commonwealth's expert testified that the tire marks indicated acceleration, rather than any braking or a loss of control of the vehicle. Thus, a reasonable factfinder could determine that Green purposefully drove his vehicle in such a way as to drive Officer Thyne into the tree and that he, therefore, acted maliciously in causing her death.

Furthermore, although Green argues his intention was "to get away," a factfinder may conclude that the defendant acted with more than one intent and "infer that a person intends the

immediate, direct, and necessary consequences of his voluntary acts." *Moody v. Commonwealth*, 28 Va. App. 702, 706-08 (1998) ("Although we recognize that appellant plainly sought to flee the parking lot, the evidence sufficiently proves his further intent to run down [the police officer] in the process of doing so."). A reasonable juror could conclude that Green willfully and purposefully accelerated his car to a speed of 20-30 miles per hour and struck the tree, knowing Officer Thyne was near or in some way stuck, which would likely cause her severe injury or death.

Relatedly, Green also argues that the circuit court erred in rejecting his motion to set aside the jury's verdict because "[t]he Commonwealth's hypothesis of guilt is no more likely than a hypothesis of innocence."

"When examining an alternate hypothesis of innocence, the question is not whether some evidence supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016) (internal quotation marks omitted). The only evidence presented at trial in favor of Green's innocence was his own testimonial account of events. He testified that he "panicked," lost control of the vehicle, and did not remember hitting the stop sign or the tree. But "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of [Green] and to conclude that [he] is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Additionally, testimony by Dr. Gunther, Corporal Moyer, Officer Meier, and Detective Kidder all supported the conclusion that Green acted with sufficient malicious intent, and thus the jury could reject Green's "theory of innocence as being unreasonable, based 'upon consideration of all the evidence and the reasonable inferences that flow from that evidence.'" *Commonwealth v. Moseley*, 293 Va. 455, 465 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 517 (2003)).

## B. Felony Hit and Run

Green also challenges the sufficiency of his felony hit-and-run conviction. Code § 46.2-894 provides, in relevant part:

> The driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible without obstructing traffic, as provided in § 46.2-888, and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, to the person struck and injured if such person appears to be capable of understanding and retaining the information . . . . The driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person.

"If the accident resulted in injury or death, failure to comply with Code § 46.2-894 is a felony." *Neel v. Commonwealth*, 49 Va. App. 389, 394 (2007). Knowledge is a necessary element to this crime, meaning that:

> [T]he driver must be aware that harm has been done; it must be present in his mind that there has been an injury; and then, with that in his mind, he must deliberately go away without making himself known. If an injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flowed, from the accident or the collision, then it is the duty of the operator to stop his vehicle.

*Herchenbach v. Commonwealth*, 185 Va. 217, 220 (1946) (quoting 5 Am. Jur. 921). In other words, felony hit and run requires "subjective knowledge of the collision while holding the driver to a stricter reasonable man standard as to the fact or extent of the injury." *Kil v. Commonwealth*, 12 Va. App. 802, 810 (1991) (quoting *Commonwealth v. Kauffman*, 470 A.2d 634, 637 (Pa. Super. Ct. 1983)). "Knowledge of injury may be imputed to a driver 'where the fact of personal injury is visible or where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries.'" *Brannon v. Commonwealth*, 52 Va. App. 800, 804 (2008) (quoting *Neel*, 49 Va. App. at 395).

- 10 -

Green argues—perhaps not directly—that he did not know that Officer Thyne was injured because he did not look around when he fled the scene of the accident. Yet the evidence is sufficient to find he had the requisite knowledge of Officer Thyne's injuries. Green testified that he remembered the air bags being deployed and when he got out of the car, the driver's side door was gone. He also knew that Officer Thyne was next to him as he drove off. Additionally, Officer Meier testified to a "large amount of debris" on the ground, which included Officer Thyne's equipment, the door of the vehicle, the street sign, and the yaw marks of the vehicle left after hitting the tree. Based on the seriousness of the collision and that Green was aware Officer Thyne was so close to the car, a reasonable person would assume Officer Thyne was injured. Thus, knowledge of the injury was properly imputed to Green. *See Brannon*, 52 Va. App. at 804 (quoting *Neel*, 49 Va. App. at 395).

Green also argues that given the "exigent and volatile circumstances" of the incident, providing aid was "unreasonable or wholly impractical." He asserts that Code § 46.2-894 provides an exception that excuses a driver for lack of compliance. Code § 46.2-894 does provide an exception when a driver, due to injuries sustained in the accident, is prevented from complying. But the driver is still required to report the accident and make reasonable efforts to locate the injured person "as soon as reasonably possible." Although he was seen limping by officers, Green does not contend that his injury prevented him from providing assistance. Rather he seemingly implies that his need to flee from police was an "exigent and volatile" circumstance, and therefore his actions fall under the exception. This is not an accurate or intended use of the statute's exception.

## II. *Brady* Violation

When a *Brady* claim is reviewed on appeal, "the burden is on appellant to show that the trial court erred." *Gagelonia v. Commonwealth*, 52 Va. App. 99, 112 (2008) (quoting *Galbraith*

*v. Commonwealth*, 18 Va. App. 734, 739 (1994)).  Although a "trial court's factual findings will not be disturbed absent clear error[,] . . . we review the trial court's legal conclusions *de novo*." *Church v. Commonwealth*, 71 Va. App. 107, 116 (2019).

Green filed a motion to set aside the verdict based on an alleged *Brady* violation.  Green alleges that "the Commonwealth failed to disclose and provide [him] with the federal-sentencing transcript."  He argues that the transcript would have created a different outcome based on its impeachment value, and thus violated his due process rights.  Green's claim, however, fails because he was present at the federal proceeding and the transcript is publicly available and readily accessible.  *See Juniper v. Warden of Sussex I State Prison*, 281 Va. 277, 281 (2011) ("Pursuant to *Brady*, there is no obligation to produce information known to the defense."); *Stockton v. Murray*, 41 F.3d 920, 927 (4th Cir. 1994) (holding that the *Brady* rule "does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense"); *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) ("[W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.").

### III.  Motion *in Limine*

Green also challenges the circuit court's decision to "grant[] the Commonwealth's motion *in limine* to present Green's prior bad acts during the guilty phase of the trial," arguing that the prior bad acts were inadmissible because they were only probative of Green's motive to flee, not an element of second-degree murder.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002) (quoting *Blain v. Commonwealth*, 7 Va. App. 10,

16 (1988)). "Evidence of other crimes, wrongs, or acts is inadmissible if offered merely to show the accused's propensity to commit the crime for which he is charged." *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022). But "prior bad acts" evidence is admissible "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." Va. R. Evid. 2:404(b). "Once the Court has determined that the 'prior bad acts' evidence is relevant, and not mere 'propensity evidence,' the Court must still determine whether the risk of unfair prejudice outweighs the probative value of the evidence." *Conley*, 74 Va. App. at 671 (citing Va. R. Evid. 2:404(b)).

Although Green does not specify which prior bad acts he is referring to in his brief, the circuit court only ruled on his convictions. But because the Commonwealth only elicited Green's prior convictions during his cross-examination, and the jury was instructed to only consider his convictions for impeachment purposes and not as evidence of his guilt, Green's motion *in limine* was properly denied. The Commonwealth did not name the convictions, present his criminal record, nor tie them to any motive. "Where the purpose of the inquiry is to impeach a witness' veracity, cross-examination concerning a witness' prior convictions is limited to prior felony convictions and convictions for misdemeanors involving moral turpitude." *Scott v. Commonwealth*, 25 Va. App. 36, 41 (1997). Thus, the convictions were not impermissibly introduced as they were used for impeachment purposes. Therefore, the circuit court's ruling on the Commonwealth's motion *in limine* and denial of Green's motion *in limine* on prior bad acts was proper.

## IV. Jury Instructions

Lastly, Green asks us to apply the ends-of-justice exception to Rule 5A:18 to address the circuit court's alleged error in failing to instruct the jury on the elements of knowledge and

proximate cause in the hit-and-run charge. During trial, Green's counsel approved of the proposed jury instructions and did not object or propose alternative instructions. The issue was first raised in Green's post-trial motion to set aside the verdict. Thus, it was not preserved and is now waived unless the ends-of-justice exception applies.

We have held that the "[a]pplication of the ends[-]of[-]justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights." *Charles v. Commonwealth*, 270 Va. 14, 17 (2005). "Generally, when a jury instruction, though erroneous, is given without a contemporaneous objection at trial, the instruction becomes 'the law of the case,' and[] any objection to the instruction on appeal is waived." *Wubneh v. Commonwealth*, 51 Va. App. 224, 228 (2008) (citation omitted) (quoting *Ulloa v. QSP, Inc.*, 271 Va. 72, 80 (2006)), *overruled in part on other grounds by Startin v. Commonwealth*, 56 Va. App. 26, 40 n.4 (2010) (en banc), *aff'd*, 281 Va. 374 (2011). "Logically, if every erroneously worded instruction justified invoking the ends-of-justice exception, the exception would swallow the rule." *Smith v. Commonwealth*, No. 2299-13-1, slip op. at 8 (Va. Ct. App. July 28, 2015).[4] Rather, "only in 'extraordinary' circumstances will this Court use the ends-of-justice exception to review a faulty jury instruction that was given without objection at trial." *Id.* (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 221 (2004) (en banc)). Thus, it is the "combination of a flawed or missing jury instruction and the failure of the evidence to prove an essential element [that] triggers the ends-of-justice exception." *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010).

Here, an obvious miscarriage of justice has not occurred. *Cf. Jimenez v. Commonwealth*, 241 Va. 244, 251 (1991) (holding that the ends-of-justice exception applied because defendant's

---

[4] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 (2012); Rule 5A:1(f).

trial counsel failed to object to a jury instruction that omitted a material element of the offense charged, which resulted in defendant being convicted of a non-offense); *Campbell v. Commonwealth*, 14 Va. App. 988, 994 (1992) (finding that the ends-of-justice exception applied because the jury instruction relieved the Commonwealth of its burden to prove intent to defraud as an element of the offense). In Green's case, the jury was instructed on the elements of the hit-and-run charge, which included that the "[defendant] knew or should have known that another person was injured by the accident," in Instruction Number 18 and on proximate cause in Instruction Number 19. Green approved these instructions. "The very fact that [Green] 'invited the error' [by agreeing to the hit-and-run jury instruction] renders Rule 5A:18's ends-of-justice exception inapplicable." *Alford*, 56 Va. App. at 709 (quoting *Rowe v. Commonwealth*, 277 Va. 495, 503 (2009)). Therefore, Green's jury instruction challenge is barred under Rule 5A:18 and the ends-of-justice exception does not apply.

CONCLUSION

For these reasons, we hold the evidence was sufficient to prove that Green committed the charged offenses. Further, the circuit court did not err by denying Green's motion to set aside the jury's verdict and granting the Commonwealth's motion *in limine*. Accordingly, we affirm the convictions.

*Affirmed.*